[Cite as *DeepRock Disposal Solutions, L.L.C. v. Forté Prods., L.L.C.*, 2021-Ohio-1436.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| DeepRock Disposal Solutions, LLC, | : | Case No. 20CA15 |
| Appellant and Cross-Appellee, | : | |
| | : | |
| v. | : | DECISION AND |
| | : | JUDGMENT ENTRY |
| Forté Productions, LLC, et al., | : | |
| Appellees and Cross-Appellants. | : | |
| | : | **RELEASED 4/21/2021** |

APPEARANCES:

Rick L. Ashton, James A. Coutinho, and Jeffrey R. Corcoran, Allen Stovall Neuman Fisher & Ashton LLP, Columbus, Ohio for Appellant and Cross-Appellee.

Craig E. Sweeney, Aaron M. Bruggeman, and Zachary Eddy, Bricker & Eckler LLP, Marietta, Ohio for Appellees and Cross-Appellants.

Hess, J.

{¶1}   This appeal involves a pipeline and whether the pipeline owner trespasses across two properties along the pipeline's route. The original pipeline owner constructed the pipeline but was placed into a receivership and its pipeline was sold to the current pipeline owner. The parties agree that there are no recorded written easements allowing the pipeline owner to cross through these two properties. Generally, when a pipeline crosses another's property without written permission to do so, it constitutes trespass. Here, the pipeline owner contends that there are defenses to the trespass claims.

{¶2}   The current pipeline owner is Appellant and Cross-Appellee DeepRock Disposal Solutions, LLC ("DeepRock"). DeepRock purchased the pipeline from the

original owner, Water Energy Services, LLC ("WES"), through the WES receivership in January 2017. DeepRock appeals the trial court's partial grant of summary judgment to appellees and cross-appellants, which dismissed DeepRock's claims for: (1) easement by estoppel, (2) a declaratory judgment on the validity of the Forté easements, (3) tortious interference with business relationship, (4) tortious interference with contract, and (5) civil conspiracy, and granted Forté and the Landowners' counterclaims against DeepRock for trespass.  The appellees and cross-appellants in this matter are Forté Productions, LLC ("Forté"), Derow Enterprises, LLC ("Derow"), Ronald Deem ("Deem"), Bailey Homestead, LLC ("Bailey Homestead"), and Terry R. Johnson ("Johnson") (Bailey Homestead and Johnson are collectively "Landowners" and the properties they own that are relevant to this lawsuit are "Properties").

{¶3}    Deem is a landman who, through his company, Derow, was retained by WES in early 2015 to obtain easements and rights-of-way for the construction of the pipeline.  Deem approached property owners along the proposed construction route to obtain written easements for the pipeline to cross through. Bailey Homestead is an LLC for the Bailey family members who own property through which the pipeline crosses. Johnson owns property through which the pipeline crosses. Bailey Homestead and Johnson did not give written easements to allow DeepRock's pipeline to cross their Properties and they alleged that DeepRock is trespassing. However, Bailey Homestead and Johnson did eventually grant written easements to Forté.  Forté is a business that, in November and December 2016, obtained and recorded written easements (the "Forté Easements") to place a pipeline on the subject Properties, but it does not own a pipeline.

In other words, DeepRock owns the pipeline, but no written easements for the Properties, and Forté has written easements for the Properties, but no pipeline.

{¶4}    Appellees/Cross-appellants appeal the trial court's partial grant of summary judgment to DeepRock on DeepRock's claim for a declaratory judgment "that any claim of the Defendants as against the WES Assets[1] * * * were released upon the sale of the WES Assets * * *." The trial court also granted summary judgment to DeepRock when it dismissed Derow and Deem's counterclaims for breach of contract/quantum meruit and frivolous conduct, but these rulings are not challenged on appeal.

{¶5}    DeepRock also appeals the trial court's order denying as moot its Civ.R. 56(G) motions to strike certain affidavits and a court-ordered as-built survey of the pipeline on the ground that the survey was not properly authenticated and that the testimony in the affidavits conflicted with the affiant's deposition testimony or that the affidavits were submitted as new evidence in a reply memorandum. The trial court issued its decision on the parties' cross motions for summary judgment, and then determined that this rendered moot DeepRock's motions to strike the survey and affidavits.

{¶6}    DeepRock raises two assignments of error for our review. First, DeepRock contends that the trial court erred in granting partial summary judgment to appellees because: (1) it refused to apply the doctrine of easement by estoppel; (2) it granted appellees summary judgment on their trespass claims; (3) it declined to find Forté's easements invalid; and (4) it dismissed DeepRock's claims for tortious interference with business relationships, tortious interference with contracts and civil conspiracy. Second,

---

[1] In its amended complaint, DeepRock defined "WES Assets" as those assets acquired pursuant to and defined in section 1.1 of the Asset Purchase Agreement. The Asset Purchase Agreement was assigned to and assumed by DeepRock.

DeepRock contends that the trial court erred in denying its motion to strike the survey and certain affidavits under Civ.R. 56(G).

**{¶7}** Because it may affect our review of DeepRock's first assignment of error challenging the trial court's decision on the parties' summary judgment motions, we review DeepRock's second assignment of error first. We find that the trial court erred when it denied as moot DeepRock's motions to strike. The trial court should have determined whether the evidence and affidavits appellees submitted to support their summary judgment motions would be considered by it before ruling on those summary judgment motions. However, we find that the error was harmless because we find that the motions to strike were properly denied on substantive grounds. We overrule DeepRock's second assignment of error.

**{¶8}** As to DeepRock's first assignment of error, we find that the trial court did not err when it granted summary judgment to appellees on DeepRock's easement by estoppel claim (Count 5 of the First Amended Complaint). DeepRock failed to present any evidence to contradict the testimony of the Landowners and WES's own landman, Deem, all who testified that the Landowners did not make misrepresentations to WES about a pipeline easement. DeepRock also failed to present evidence to contradict the Landowners' and Deem's testimony that the Landowners voiced objections to WES when they discovered that the pipeline crossed their Properties.

**{¶9}** The trial court also ruled properly on appellees' trespass claims (Count 1 of Amended Counterclaims) because in DeepRock's reply to the amended counterclaims, DeepRock admitted its pipeline crossed the Properties. And, DeepRock failed to present any expert testimony or an alternative as-built survey of the pipeline to contradict the court

ordered as-built survey prepared by the expert surveyor the parties agreed to jointly retain to perform the survey.

**{¶10}** The trial court did not err when it dismissed DeepRock's claim that the Forté Easements were invalid (Count 2 of First Amended Complaint). Forté did not obtain the easements in violation of the doctrines of champerty and maintenance; the easements were obtained before DeepRock purchased the pipeline and well before DeepRock filed its action against the Landowners. Additionally, DeepRock named Forté as a defendant in the action. Therefore, Forté had both a bona fide interest in the case and was a party to it. Although WES was in a receivership, Forté did not violate the receivership stay order when it acquired the easements because the Landowners' Properties were not assets of the receivership estate. The Landowners were free to do as they wished with their Properties.

**{¶11}** Finally, we find that the trial court properly dismissed DeepRock's tortious interference with business relationships/contracts and civil conspiracy claims against Forté, Derow, and Deem (Counts 6, 7, and 8 of First Amended Complaint). DeepRock alleged that these three interfered with DeepRock's business relationships and contracts with the Landowners in late 2016 when Forté obtained its easements. Construing the evidence most strongly in DeepRock's favor we find that business relationships existed between WES and Bailey Homestead and Johnson. However, those relationships ended in late 2015 when WES constructed the pipeline on the Properties and failed to provide an appropriate and acceptable response when the Landowners objected. As for its tortious interference with contract claim, DeepRock failed to produce any evidence of any contractual agreement between WES and the Landowners. Because DeepRock failed to

provide any evidence that a business relationship between WES and the Landowners existed in late 2016, and no evidence of any contracts, its tortious interference claims were properly dismissed. And, without evidence of an underlying tort, the civil conspiracy claim fails.

**{¶12}** Appellees/Cross-Appellants raise one assignment of error challenging the trial court's grant of summary judgment in DeepRock's favor finding that DeepRock purchased the WES assets free and clear of all liens, claims, and encumbrances arising prior to or on the date of the confirmation of the receivership sale (Count 3 of First Amended Complaint).

**{¶13}** We acknowledge that a great deal of confusion exists among the parties concerning this claim. To the extent that the trial court's order might be read to dismiss all of the Landowners' and Forté's trespass claims, we agree it was in error. However, we find that the trial court correctly determined that WES's assets were sold free and clear of any lien, claim or encumbrances against the assets arising prior to the pipeline's sale – those liens attached to the pipeline sale proceeds and were handled in the receivership. This finding has little relevance in this litigation because none of the cross-appellants' counterclaims asserted any interest in WES's assets.  We also find that the trial court properly found that the Landowners' and Forté's trespass claims against WES, which arose when the pipeline was constructed without permission on the Properties and ended when WES was no longer the pipeline owner, could not be brought against DeepRock. And, Deem and Derow's breach of contract/quantum meruit claims against WES could not be brought against DeepRock. DeepRock was not a successor of WES and had no successor liability for any of WES's obligations. However, the Landowners and Forté

could bring trespass claims against DeepRock for DeepRock's own trespass on the Properties, which commenced when DeepRock became owner of the pipeline and failed to remove the pipeline from the Properties, and continues until DeepRock either removes the pipeline or obtains the Landowners' permission to cross the Properties. The trial court allowed cross-appellants' trespass claims against DeepRock and will let a jury determine the merits of any defense DeepRock might have that has not already been rejected on summary judgment (i.e., the rejected defenses that the pipeline does not cross the Properties or that there are easements by estoppel). Due to the broad, somewhat ambiguous language used in the trial court's order, we sustain in part the cross-appellants' sole assignment of error.

{¶14} We affirm, in part, the trial court's judgment and modify it only to the extent that it barred cross-appellants' trespass claims against DeepRock that arose when DeepRock acquired the pipeline. Those claims are allowed to proceed.

I. FACTS AND PROCEDURAL BACKGROUND

{¶15} DeepRock filed a complaint against Forté, Derow, Deem, Bailey Homestead, and Johnson in July 2017 concerning whether DeepRock's wastewater disposal pipeline was trespassing upon Johnson's and Bailey Homestead's Properties and interfering with easements Johnson and Bailey Homestead had given to Forté. Appellees answered and asserted counterclaims for trespass, among other claims.

{¶16} In January 2018, at DeepRock's request, the trial court ordered an "as built" survey "to determine the precise location of the subject pipeline as it related to the Bailey Homestead Property and the Johnson Property." The trial court ordered: (1) Smith Land Surveying, Inc. to perform the survey, (2) Johnson and Bailey Homestead to allow Smith

Land Surveying access to their Properties to complete the survey, and (3) the costs of the survey to be split equally by the parties. The order stated that the parties agreed to its terms.  After Smith Land Surveying completed the survey, appellees filed a motion for partial summary judgment in March 2018, but the motion was later withdrawn after DeepRock filed a first amended complaint and appellees filed answers and amended counterclaims.

{¶17}   In its First Amended Complaint filed August 2018, DeepRock alleged that it had acquired the wastewater pipeline, along with easements and other assets from Water Energy Services, LLC ("WES") in a receivership case in January 2017.  WES was a company that built and operated a wastewater disposal operation in Marietta, Ohio in 2015 but was placed under a receivership in July 2016. DeepRock alleged that in 2015, WES hired Deem and his company, Derow, to serve as the landman to acquire right-of-way easements for the construction of the wastewater pipeline. DeepRock alleged that WES disputed certain invoices Deem and Derow submitted for over $10,000 in services and that Deem never delivered any documentation of any easements from Bailey Homestead or Johnson[2] even though WES paid Bailey Homestead $6,000 for a right-of-way easement over its Property.

{¶18} DeepRock alleged that Bailey Homestead and Johnson conveyed easements to Forté in late 2016, which were recorded on November 30 and December 2, 2016, that conflicted with WES's right to maintain a pipeline through the Properties. The sale of WES assets occurred on December 6, 2016 and DeepRock contends that it was the successful bidder but did not discover the recorded Forté Easements until after

---

[2] It is undisputed that Johnson executed two options and rights-of-way with WES for properties that adjoin the Johnson Property at issue in this case. Those properties are not the subject of this litigation.

the sale. After DeepRock became owner of the pipeline, Forté, Johnson, and Bailey Homestead informed DeepRock that its pipeline was trespassing and demanded that it stop transporting liquids through the Properties, or alternatively, pay a total of $2.00 per barrel to Forté. DeepRock alleged that it asked to survey the Properties to determine the location of the pipeline but Forté, Johnson, and Bailey Homestead refused. DeepRock allegedly made repeated requests for documentation of the location of its pipeline, but its requests were denied.

**{¶19}** DeepRock contended that no post-installation survey was made of the pipeline and although it believed the pipeline did not travel through Bailey Homestead and Johnson's Properties, DeepRock claimed to have valid easements to do so. DeepRock sought: a declaratory judgment that the pipeline is not located on those Properties or on the Forté Easements (Count 1); a declaratory judgment that the Forté Easements were invalid (Count 2); a declaratory judgment as to whether any of the defendants' claims against WES assets, including trespass claims, survived the receivership sale (Count 3); damages under the doctrine of promissory estoppel because DeepRock contends that Bailey Homestead and Johnson made promises to provide right-of-way easements to WES for the pipeline (Count 4); easement by estoppel because DeepRock contends that Bailey Homestead and Johnson consented to the pipeline construction and allowed it to be constructed without objection (Count 5); tortious interference with WES's business relationship with Bailey Homestead and Johnson against Deem, Derow, and Forté based on Forté's acquisition of easements (Count 6); tortious interference with WES's contract with Johnson and Bailey Homestead by Deem, Derow, and Forté based on Forté's acquisition of easements (Count 7); civil conspiracy

against Deem, Derow, and Forté for the same allegedly tortious conduct (Count 8); breach of contract against Johnson and Bailey Homestead for failing to provide an easement for the pipeline (Count 9); breach of contract against Deem and Derow for failing to deliver the easements for the Bailey Homestead and Johnson Properties (Count 10).

**{¶20}** The defendants each filed amended counterclaims. Johnson, Bailey Homestead and Forté sought a declaratory judgment that the pipeline is trespassing on their Properties, claims for trespass and willful trespass-related damages against DeepRock, injunctive relief to prevent DeepRock's continued use of the pipeline, and a claim for frivolous conduct based on the fact that the court-ordered as-built survey prepared by Smith Land Surveying shows that DeepRock's pipeline encumbers 197 linear feet of the Johnson property and 1,103 feet of the Bailey Homestead property, yet DeepRock's First Amended Complaint still includes a claim for declaratory judgment that the pipeline does not trespass on the Properties.

**{¶21}** Deem and Derow brought breach of contract counterclaims alleging that DeepRock claimed to be the successor in interest to WES and claimed an interest in WES's contract rights with Deem and Derow and therefore Deem and Derow are entitled to counter with a claim for unpaid invoices against DeepRock. Deem and Derow also sought a declaratory judgment that their contract with WES terminated in April 2016 based on the disengagement letter and they owed no duty to WES or DeepRock. Deem and Derow also asserted a frivolous conduct claim on the same grounds as the other defendants.

**{¶22}** In its reply to Johnson and Bailey Homestead's counterclaim for trespass, DeepRock denied "that it is a successor-in-interest to WES" because that term was undefined.[3] However, DeepRock repeatedly admitted that its pipeline crossed the Johnson and Bailey Homestead Properties and that it transported brine through the pipeline. DeepRock contended that it lacked sufficient knowledge about the respective lengths of the pipeline on the Properties. DeepRock also admitted that it purchased the WES assets after the Forté Easements were publicly recorded.

**{¶23}** The parties then filed various motions for summary judgment or partial summary judgment. DeepRock filed two motions to strike evidence appellees' submitted in support of their summary judgment motions. In its first motion to strike, DeepRock sought to have the affidavits of Deem, Johnson, and Michael Bailey stricken because they allegedly contained false statements. DeepRock also asked to have the court-ordered as-built survey stricken because it lacked proper authentication and foundation under Evid.R. 702, governing testimony by experts. In its second motion to strike, DeepRock asked to have Deem's supplemental affidavit stricken because it was "ambush evidence."

**{¶24}** The trial court ruled on the various summary judgment motions. As to DeepRock's First Amended Complaint, the trial court dismissed the following: validity of Forté Easements (Count 2); easement by estoppel (Count 5); tortious interference with business relationships (Count 6); tortious interference with contracts (Count 7); and civil conspiracy (Count 8). The trial court allowed the following DeepRock claims to proceed forward: declaratory judgment of the pipeline location (Count 1); breach of contract claims

---

[3] In paragraph 1 of DeepRock's First Amended Complaint, it alleged "DeepRock is the successor in interest to all assets of [WES]," in its promissory estoppel count, DeepRock alleged that it was "successor-in-interest to the WES assets and claims," and in its tort claims DeepRock more broadly alleged it was WES's "successor."

against Forté, Johnson, and Bailey Homestead (Count 9); and breach of contract claims against Deem and Derow (Count 10).

{¶25} As to DeepRock's request for a declaration that it purchased the WES assets free and clear of any and all claims, liens and encumbrances of the appellees (Count 3 of First Amended Complaint) – the trial court granted judgment to DeepRock. The trial court's decision states:

> Johnson, Bailey and Forté's trespass claims ended at least as of the confirmation date of the sale. Their claims may have begun the day after the confirmation of the sale and continue to the present.
>
> However, the jury may find that these three defendants' claims should be denied until the date of this entry or another date because of defendants' inaction in filing proofs of claim or plaintiff incurring no successor liability for WES' debts. Johnson and Bailey could have submitted claims to the receiver prior to the sale, followed Confirmation Order, paragraph 10 procedures, or filed a lawsuit about their trespass claim instead of conveying easements to Forté.
>
> In sum, plaintiff's count against Bailey[,] Johnson and Forté is granted as of the date of the confirmation of the sale. However, it is an issue for the jury if Forté, Bailey and Johnson's claims continues to a date beyond the sale confirmation date.
>
> The Court denies defendants' motion and grants plaintiff's motion on Count III of the First Amended Complaint.

The trial court's analysis is ambiguous and the last sentence appears to broadly grant DeepRock's motion. However, when read in context, we construe it as follows:  The Johnson, Bailey Homestead and Forté's trespass claims and trespass-related damages that existed up through the WES asset sale were barred. However, trespass claims brought against DeepRock that began when DeepRock acquired the pipeline could be pursued. DeepRock was not entitled to a declaration that DeepRock was not liable in trespass.

**{¶26}** On Forté, Johnson, and Bailey Homestead's claims, the trial court granted their claim for a declaratory judgment that DeepRock's pipeline is on their Properties (Count 1 of Amended Counterclaims) and allowed trespass and willful trespass claims to proceed forward (Counts 2 and 3 of Amended Counterclaims). The trial court also allowed Count 4 to proceed forward, which alleged frivolous conduct by DeepRock for asserting a claim that the pipeline is not on the Landowners' Properties after the court-ordered as-built survey shows that it is, and allowed Landowners and Forté's claim for an injunction against DeepRock's continued use of the pipeline.

**{¶27}** The trial court dismissed Deem and Derow's claim for unpaid invoices (Count 1) and claim for frivolous conduct (Count 3). The trial court determined that the claim for declaratory judgment that Deem and Derow owed no duty to DeepRock was not part of the summary judgment motion and did not address it (Count 2). Thus, Deem and Derow's declaratory judgment claim remains pending.

**{¶28}** The parties appealed various aspects of the trial court's decision.

II. ASSIGNMENTS OF ERROR

**{¶29}** DeepRock designates two assignments of error for review:

I. The Trial Court erred in entering the May 1, 2020 *Entry: Motions for Summary Judgment.* [Summary Judgment Entry at pp. 637-647.] (Brackets sic.)

II. The Trial Court erred in entering the May 1, 2020 *Entry Dismissing Two Motions as Moot.* [ Entry on Motions to Strike at p. 636.] (Brackets sic.)

**{¶30}** Cross-appellants designate one assignment of error for review:

I. The trial court erred in granting summary judgment in favor of Plaintiff as to Count III of Plaintiff's Amended Complaint.

III. Jurisdictional Issue

**{¶31}** Before addressing the merits of the errors assigned for our review, we must first consider a threshold jurisdictional issue. Ohio law provides that courts of appeals in this state have jurisdiction to review the final orders or judgments of inferior courts within their district. Section 3(B)(2), Article IV of the Ohio Constitution; R.C. 2501.02. In the event that a jurisdictional issue is not raised by the parties, then we must raise it sua sponte. *Whitaker–Merrell Co. v. Geupel Constr. Co.,* 29 Ohio St.2d 184, 186, 280 N.E.2d 922 (1972); *In re Murray*, 52 Ohio St.3d 155, 159-160, 556 N.E.2d 1169, fn. 2 (1990); *Kouns v. Pemberton,* 84 Ohio App.3d 499, 501, 617 N.E.2d 701 (4th Dist.1992).

**{¶32}** Here the trial court's judgment disposed of several, but not all, of Deeprock's claims and several of the appellees' counterclaims. In such instances under Civ.R. 54(B) the trial court may enter final judgment as to one or more but fewer than all of the claims or parties upon an express determination that there is no just reason for delay.  Here the trial court's judgment includes the "no just reason for delay" language.

**{¶33}** The Supreme Court of Ohio has held that " '[f]or an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court.' " *Natl. City Commercial Capital Corp. v. AAAA at Your Serv., Inc.*, 114 Ohio St.3d 82, 2007-Ohio-2942, 868 N.E.2d 663, ¶ 7, quoting *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989). A decision dismissing some causes of action, while leaving some remaining does this:

> R.C. 2505.02(B)(1) provides that an order "that affects a substantial right in
> an action that in effect determines the action and prevents a judgment" is

final and appealable. The portions of the trial court's order that granted summary judgment to several defendants on entire claims against them "determine[d] the action" as to those parties, and thus was a final order pursuant to R.C. 2505.02. Summary judgment precluded any recovery on those claims. Together with the appropriate "no just cause for delay" Civ. R. 54(B) language that the trial court added on June 3, 2005, those aspects of the order were final and appealable, even though other portions of the order were not immediately appealable. Therefore, the [order on appeal], with the later addition of the Civ.R. 54(B) language, is final and appealable, but only to the extent that it granted summary judgment on entire claims. (Citations omitted.)

*Stuck v. Miami Valley Hosp.,* 2d Dist. Montgomery No. 28233, 2020-Ohio-305, ¶ 8, quoting *Interstate Properties v. Prasanna, Inc.*, 9th Dist. Summit No. 22734, 2006-Ohio-2686, ¶ 14.

**{¶34}** Therefore, the trial court's decision granting summary judgment on some of the claims in the case and dismissing them, and appending a Civ.R. 54(B) certification, is a final appealable order as to the claims that were granted and/or dismissed. The portion of the trial court's order that denies summary judgment on DeepRock's declaratory judgment claim (Count 1), promissory estoppel claim (Count 4), and breach of contract claims (Counts 9 and 10) and the portion that denies summary judgment on Forté and the Landowner's counterclaims for willful trespass and frivolous action (Counts 2, 3, and 4) are not final or reviewable.

**{¶35}** Additionally, as DeepRock concedes, a trial court's order denying a motion to strike an affidavit or other evidence supporting a summary judgment motion would not be a final appealable order. However, in the context of our review of the trial court's decision granting summary judgment on some of the claims, the trial court's denial of DeepRock's motions to strike is directly related and reviewable. *See Ceasor v. City of East Cleveland*, 2018-Ohio-2741, 112 N.E.3d 496 (8th Dist.) (finding that an order

denying summary judgment on city's claim of governmental immunity was a final appealable order and the related order denying city's motion to strike plaintiff's expert report filed in opposition to city's summary judgment motion was reviewable on appeal).

IV.      DeepRock's Motions to Strike

**{¶36}** We will address DeepRock's second assignment of error first because the court-ordered as-built survey and affidavits it sought to have stricken supports the appellees' summary judgment motion. If the trial court erred in denying the motions to strike, it may substantively impact our review of DeepRock's first assignment of error and the cross-appellants' sole assignment of error, both which challenge the trial court's decision on the summary judgment motions.

**{¶37}** After DeepRock filed its complaint and the appellees filed their counterclaims, the appellees filed a combined motion for partial summary judgment accompanied by affidavits from Deem, Michael Bailey as the managing member of Bailey Homestead, and Johnson as well as the court-ordered as-built survey of the pipeline. Appellees eventually withdrew this summary judgment motion because, while it was pending, DeepRock filed a First Amended Complaint and the appellees filed Amended Counterclaims. Appellees then filed new summary judgment motions with new supporting affidavits, DeepRock filed a motion for partial summary judgment, and the parties filed their respective oppositions and replies.

**{¶38}** DeepRock filed two separate motions to strike. One pursuant to Civ.R. 56(G) that sought to: (1) strike the affidavits of Deem, Johnson, and Bailey on the ground that these affidavits conflicted with the affiant's deposition testimony, contained speculative statements, and mischaracterized documents; (2) strike the court-ordered as-

built survey of the pipeline because it lacked proper authentication and foundation; and (3) impose sanctions on the appellees. The second motion to strike argued that a supplemental Deem affidavit and accompanying exhibits should be stricken because it was submitted in support of a reply memorandum as speculative ambush evidence, and it contained testimony about lost or destroyed documents in violation of Evid.R. 1002 and 1004. Appellees opposed the motions to strike.

**{¶39}** The trial court did not rule on DeepRock's motions to strike until after it decided the parties' summary judgment motions and then it denied them as moot. We find that the trial court erred in denying the motions as moot because it should have first determined whether it would consider this evidence before rendering its decision on the summary judgment motions. However, we find this error harmless because, for alternative reasons, we affirm the trial court's decision to deny DeepRock's motions to strike.

### A. Standard of Review

**{¶40}** DeepRock's motions to strike were based on two different legal theories. First, it argued that the survey should be stricken because it lacked proper authentication and foundation and that Deem's supplemental affidavit should be stricken because it was included with the reply memorandum and should be excluded under Evid.R. 1002, which are all evidentiary challenges. "Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review." *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032; *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19 ("It is well established that a trial court's decision to admit evidence is an evidentiary determination within the broad discretion of

the trial court and subject to review on an abuse-of-discretion standard."). Thus, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence absent a clear showing of an abuse of discretion with attendant material prejudice to the complaining party. *State v. Green*, 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.).

**{¶41}** When, however, an appellant alleges that a trial court's evidentiary ruling was " 'based on an erroneous standard or a misconstruction of the law,' " an appellate court reviews the trial court's evidentiary ruling using a de novo standard of review. *Wray v. Wessell*, 4th Dist. Scioto Nos. 15CA3724 and 15CA3725, 2016-Ohio-8584, ¶ 13, citing *Morris* at ¶ 16, quoting *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (2d Dist.1992); *accord Estate of Johnson* at ¶ 22 (reviewing admissibility of evidence by first examining whether, as a matter of law, statute applied, and then once threshold question concerning applicability of statute resolved, reviewing whether trial court abused its discretion); *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13 (stating that "[w]hen a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate"); Painter and Pollis, *Ohio Appellate Practice*, Appendix G (2015) (stating that although trial court decisions involving the admission of evidence are generally reviewed as a discretionary matter, but they are subject to de novo review if a clear legal rule applies. "For example, a trial court does not have discretion to admit hearsay into evidence"). *State v. Wright,* 2017-Ohio-9041, 101 N.E.3d 496, ¶ 24-25 (4th Dist.).

**{¶42}** Second, DeepRock argued that the Deem, Johnson, and Bailey affidavits should be stricken as made in bad faith under Civ.R. 56(G). In reviewing the denial of a Civ.R. 56(G) motion, we apply an abuse of discretion standard. *Residential Funding Co. v. Thorne*, 2012-Ohio-2552, 973 N.E.2d 294, ¶ 41 (6th Dist.). " '[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.' " "An abuse of discretion includes a situation in which a trial court did not engage in a ' "sound reasoning process." ' " "The abuse-of-discretion standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." (Citations omitted.) *Gulbrandsen v. Summit Acres, Inc.*, 2016-Ohio-1550, 63 N.E.3d 566, ¶ 31 (4th Dist.).

### B. Review of Court Ordered As-Built Survey

**{¶43}** DeepRock argued that the court-ordered as-built survey should be stricken because it was not properly authenticated and the appellees failed to lay the proper foundation. The trial court decided that this issue was made moot by its decision on the summary judgment motions and denied the motion to strike. However, we find that the trial court should have determined the admissibility of the survey prior to ruling on the summary judgment motions and its failure to do so was an error of law subject to de novo review. Nevertheless, we find the error harmless and affirm the trial court's denial on substantive grounds because the survey was properly authenticated and did not lack proper foundation.

**{¶44}** At DeepRock's request and with the parties' agreement, the trial court ordered Smith Land Surveying, Inc. to prepare an as-built survey of the pipeline. Smith Land Surveying completed the survey and DeepRock's attorney provided a copy of it to

appellees' attorneys via email. Appellees attached a copy of this email communication to its memorandum opposing the motion to strike showing that they obtained the survey from DeepRock's attorney. Appellees' attorney tried to obtain an affidavit from Smith Land Surveying to authenticate the survey as a true and accurate copy, but Smith Land Surveying responded that the project manager involved was no longer employed there.[4] Instead, Mr. Smith sent an email to appellees' attorney that contained a transmittal letter, a memo, and a copy of the as-built survey. In the memo, Mr. Smith stated, "We prepared an As-Built Brine Line Location Exhibit as requested by DeepRock Disposal Solutions, LLC on the 26th of January 2018." The as-built survey included the notation that it was prepared on January 26, 2018 for DeepRock by Smith Land Surveying as Job No. 8780. The transmittal letter was addressed to appellees' counsel, stated that it was from Smith Land Surveying for Job No. 8780, and stated, "We are sending you attached * * * 1 copy As-Built Brine Line Location Exhibit" and "1 copy Memo." The transmittal letter, memo, and as-built survey were attached to appellees' memorandum opposing the motion to strike.

{¶45} Appellees argued that these documents provided ample proof to establish that the as-built survey is what they claim it is under Evid.R. 901. We agree.

{¶46} Evid.R. 901(A) governs authentication, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Subpart (B) provides, "By way of illustration only, and not by way of limitation, the following are

---

[4] The project manager was not the only person who could have authenticated the survey. It could have been authenticated by a person at Smith Land Surveying with the ability to compare the version of the survey appellees submitted with their summary judgment motion to the version Smith Land Surveying prepared and verify that it was a true and accurate copy.

examples of authentication or identification * * *." "The threshold standard for

authenticating evidence is low." *Stumpff v. Harris*, 2015-Ohio-1329, 31 N.E.3d 164 (2d

Dist.).

> Evid.R. 901 does not provide an exhaustive list of the means of authentication. Indeed, Evid.R. 901(B) expressly states, "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule [.]" In our view, testimony regarding the production of a document during discovery may provide sufficient indicia of authenticity to satisfy Evid.R. 901.

> * * *

> Numerous courts, both state and federal, have held that items produced in discovery are implicitly authenticated by the act of production by the opposing party. *See, e.g., Welch v. Bissell*, N.D.Ohio No. 1:12CV3108, 2013 WL 6504679, *4 (Dec. 11, 2013) (video was properly authenticated by affidavit from counsel that the video was produced by the opposing party during discovery); *Churches of Christ in Christian Union v. Evangelical Ben. Trust*, S.D.Ohio No. C2:07CV1186, 2009 WL 2146095, *5 (July 15, 2009) ("Where a document is produced in discovery, 'there [is] sufficient circumstantial evidence to support its authenticity' at trial."); *Hampton v. Bruno's, Inc.*, 646 So.2d 597, 600 (Ala.1994) ("when a document is produced by a party during discovery, that party waives the right to object to the admission of the document on the basis of its genuineness or authenticity") (interpreting *Alabama Power Co. v. Tatum,* 293 Ala. 500, 306 So.2d 251 (1975)); *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir.1991); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir.1985) (fact that documents were produced in discovery was probative of authenticity); *United States v. Brown*, 688 F.2d 1112 (7th Cir.1982) ("Brown produced the documents voluntarily and, as an officer of the corporation, he was in a position to vouch for their authenticity. Just as he could have identified the records by oral testimony, his very act of production was implicit authentication.").

> * * *

> This is not to say that everything produced in discovery should automatically be deemed authenticated. *See, e.g., Cramer v. NEC Corp. of America,* 5th Cir. No. 12–10236, 2012 WL 5489395, *2 (Nov. 13, 2012) (document purporting to be job description was not authenticated by production in discovery where the discovery request was too broad to provide evidence of authenticity, the document itself bore no indication of authenticity, and deposition testimony regarding the document was noncommittal). As explained by the Supreme Court of Kentucky:

Other courts have applied this notion of implied authentication in the context of civil discovery, sometimes stating the rule quite broadly. *See, e.g., South Central Bank and Trust Company v. Citicorp Credit Services, Inc.*, 863 F.Supp. 635, 645 (N.D.Ill.1994) ("[P]roduction of a document amounts to an implicit authentication of the document.") (citing *United States v. Brown*, 688 F.2d 1112 (7th Cir.1982)); *In re Greenwood Air Crash*, 924 F.Supp. 1511, 1514 (S.D.Ind.1995). ("Production of a document by a party constitutes an implicit authentication of that document.") (also citing *Brown* ). In most of these cases, however, the person producing the document is competent to authenticate it—a private individual producing his own papers, say, or a business's records custodian producing the business's documents—and in those cases production can indeed be said to imply the document's authenticity. * * * [H]owever, parties may have in their possession or control documents from other sources and even documents of unknown origin, which they would not be competent to authenticate directly. It is hard to see in those circumstances how the mere production of the document—in response, say, to a very broad request for "everything in your possession or control having to do with X"—implies anything about the extraneous document's authenticity.

*Thrasher v. Durham,* 313 S.W.3d 545, 548 (Ky.2010). The Supreme Court of Kentucky thus held that "the fact that the document was produced in discovery may give rise to an inference of authenticity where production was made by someone competent to provide authentication, but the mere fact of production does not suffice where that competence is lacking." *Thrasher* at 549.

*Stumpff* at ¶ 33-38; *Nau v. Stonebridge Operation Co.*, 7th Dist. Noble No. 19NO0466, 2019-Ohio-3647, ¶ 39 ("Ohio courts have held that items produced in discovery are implicitly authenticated by the act of production by the opposing party."); *Diller v. Miami Valley Hospital,* 2017-Ohio-9051, 102 N.E.3d 520 (2d Dist.). The Supreme Court of Ohio recently discussed the holdings in *Stumpff* and *Nau* and acknowledged that testimony of a witness with knowledge is not the only method by which documents may be authenticated. Under Evid.R. 901(B)(4), trial courts may take into consideration the distinctive characteristics of the document and the circumstances of the case. *Columbus*

*City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 159 Ohio St.3d 283, 2020-Ohio-353, 150 N.E.3d 877, ¶ 20-22 ("Indeed, 'implied authentication by production in discovery' has been recognized as satisfying the requirement of Evid.R. 901" and finding that a purchase and sale agreement and a settlement statement were authenticated under Evid.R. 901(B)(4)).

**{¶47}**  DeepRock does not challenge the authenticity of the survey on substantive grounds – it does not argue that the survey attached to the summary judgment motion differs in any material respect from the copy provided by DeepRock's counsel to appellees' counsel. Rather DeepRock contends that the trial court should strike the survey because it was not authenticated by the method set out in Evid.R. 901(B)(1) (testimony of witness with knowledge). Here, considering the totality of the circumstances, we find that the survey was authentic. The survey was performed pursuant to the trial court's order, the expert surveyor was agreed upon by the parties, a copy of the survey was produced by DeepRock's attorney during the course of the litigation and was responsive to document production requests, the survey was produced and identified in subsequent communications from the surveying company that prepared it, and the job number identified on the survey matches the one on the transmittal letter. These circumstances provide strong evidence that the survey was authentic and were sufficient to show that the survey is what appellees claimed it to be under Evid.R. 901(B)(4).[5]

**{¶48}**  DeepRock also argued that the survey should have been stricken as inadmissible expert testimony under Evid.R. 702, which outlines the foundation for expert

---

[5] Given the circumstances, the parties could have readily stipulated to the survey's authenticity but this professional courtesy was not extended. Additionally, the trial court could order the surveyor to file a certified copy of the as-built survey with the court.

witness testimony, i.e., the expert's qualifications and methods. However, here the parties agreed to retain this expert surveyor. The trial court found the expert acceptable and ordered the parties to jointly share the costs. Any objection by DeepRock to Smith Land Surveying's expertise was waived when it agreed to use them as the expert – any error was invited.

**{¶49}** Although the trial court's rationale for denying DeepRock's motion to strike the court-ordered as-built survey was incorrect, the decision to deny it was not. Thus, the error was harmless. We will consider the survey in our review of the parties' assignments or error.

C. Review of Civ.R. 56(G) Sanctions

**{¶50}** " 'Unless a motion to strike has been properly granted pursuant to Civ.R. 56(G), all evidence presented is to be evaluated by the trial court pursuant to Civ.R. 56(C) before ruling.' " *Pettiford v. Aggarwal*, 126 Ohio St.3d 413, 2010-Ohio-3237, 934 N.E.2d 913, ¶ 24, quoting *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 26. Civ.R. 56(G) provides:

> (G) Affidavits Made in Bad Faith. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

**{¶51}** DeepRock must show that the affidavits were made in "bad faith." "Bad faith" means "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will. It partakes of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Slater v. Motorists Mut. Ins. Co.,*

174 Ohio St. 148, 151, 187 N.E.2d 45, 48 (1962), overruled on other grounds by *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 1994-Ohio-461, 644 N.E.2d 397 (1994). In *Deutsche Bank Trust Co. v. Fox*, 5th Dist. No. 11CA0065, 2012-Ohio-2855, the appellate court affirmed the trial court's denial of Civ.R. 56(G) sanctions where the appellant argued that the affiant "robo-signed" his affidavit without reading every paragraph or inspecting the exhibits attached to it. The appellate court noted that there was "a dearth of Ohio case law" interpreting "bad faith" as used in Civ.R. 56(G), so the court relied on case law from Ohio federal district courts and held that "bad faith" is "where affidavits contained perjurious or blatantly false allegations or omitted facts concerning central issues to the resolution of the case." *Id* at ¶ 30-31 (internal quotations omitted). "Sanctions under Rule 56 are 'rare' and the conduct involved must be 'egregious.' " *TCF Inventory Finance, Inc. v. Northshore Outdoor, Inc.,* N.D. Ohio No. 1:11CV85, 2012 WL 2576367 (July 3, 2012); *Abdelkhaleq v. Precision Door of Akron,* 653 F.Supp.2d 773, 787 (N.D. Ohio 2009). "Additionally, courts have not awarded sanctions under Rule 56(g) 'where a litigant's actions, even though wrongful, did not affect the disposition of the summary judgment motion.' " *Abdelkhaleq* at 787.

{¶52} DeepRock's motions focus exclusively on the "bad faith" component of Civ.R. 56(G); there is no evidence in the record of "purposeful delay." DeepRock argued that Deem's affidavit should be stricken because Deem's affidavit states that Johnson refused to execute a written easement for the pipeline on his Property but in his deposition Deem testified that Johnson agreed to allow the pipeline to be built on his Property. However, our review of the deposition shows that Deem testified that it was his understanding that Johnson may have been in negotiations over a two-foot section of his

Property. We find no inconsistency between Deem's deposition testimony and his affidavit. Johnson could have engaged in preliminary negotiations about a possible easement across a small section of his Property and ultimately refused to execute a written easement for the pipeline to cross a larger or different section of his Property.

**{¶53}** DeepRock also argued that Deem's affidavit conflicted with Forté's deposition testimony concerning the level of Deem's involvement in the Forté easement transaction.  In his affidavit, Deem testified that after he introduced Forté to Johnson and Bailey Homestead, he had no further involvement. However, DeepRock contends that this conflicts with Robin Forté's deposition, who testified that funding for the easement came from Deem and that an employee of Derow[6] notarized the easement.  Without specific dates, this testimony is vague and imprecise concerning when Deem's involvement ended. Regardless, it cannot constitute bad faith by Deem. That Deem and Forté – two different witnesses – may have conflicting testimony is not a basis to strike Deem's affidavit on bad faith grounds. DeepRock points to no evidence that Deem was lying or intentionally deceptive. If a witness's deposition testimony actually conflicts with another witness's affidavit about a material fact, then it may be grounds to deny summary judgment.  But it does not rise to the level of bad faith, which requires perjurious or blatantly false facts concerning *central issues* to the resolution of the case.

**{¶54}** DeepRock argued that Johnson's first affidavit contained false statements and that Johnson admitted to "scanning over" the affidavit.  However, the first affidavit was submitted in support of the first summary judgment motion, which was withdrawn and not considered by the trial court. There is no evidence the trial court considered evidence

---

[6] Deem testified that Derow had no employees and instead used independent contractors to perform services.

supporting the withdrawn motion. Thus, there is no evidence that those affidavits affected the disposition of the second summary judgment motion, which had separate, different affidavits supporting it. *Abdelkhaleq* at 787 (courts have not awarded sanctions under Rule 56(g) "where a litigant's actions, even though wrongful, did not affect the disposition of the summary judgment motion"). And, "scanning over" an affidavit is not the same as providing perjurious and blatant false statements in it. *See Deutsche Bank Trust Co., supra* (robo-signing affidavit does not constitute bad faith).

**{¶55}** DeepRock argued that Johnson's second affidavit falsely states that he never agreed to the installation of the pipeline across the length of his property. It contends that this statement conflicts with Johnson and, as previously discussed, Deem's deposition testimony. However, Johnson's deposition testimony was that he had preliminary discussions about the possibility of the pipeline cutting across a 15-foot corner – not an installation across of the full length of his Property. We find no inconsistency in his affidavit and his deposition testimony.

**{¶56}** Finally, DeepRock argued that Michael Bailey's affidavit contained blatantly false and perjurious statements concerning if and when Bailey had written notice of the WES receivership. DeepRock contends that Bailey's affidavit stated that he had no knowledge of the WES receivership until after DeepRock filed its lawsuit in July 2017. However, in his deposition Bailey testified that Johnson told him about the WES receivership in December 2016, seven months earlier. In his deposition, Bailey testified that Johnson told him there was a receivership, but did not explain what a receivership was or what happens in one. Bailey testified that he did not do any research on his own to figure out what a receivership was or what happens in one. Thus, reading Bailey's

affidavit and deposition testimony together, it appears that Bailey knew of the existence of the WES receivership in December 2016, but did not have an understanding of the WES receivership until seven months later when DeepRock filed its lawsuit. Thus, Bailey's affidavit statement "I had no knowledge of any receivership action in association with WES until after the filing of the subject litigation" is inaccurate. A more accurate statement would be that Bailey had knowledge of the existence of the WES receivership, but no knowledge or understanding of the implications of the WES receivership until after DeepRock filed its lawsuit. Regardless, DeepRock provided no evidence that Bailey's inaccurate statement was made with the requisite bad faith intent or an ulterior motive to commit fraud, or that the timing of when Bailey learned of the WES receivership is a central issue in the case.

{¶57} DeepRock also argued that Bailey made blatant bad faith falsehoods when he testified that checks he received from WES in the sum of $6,000 and $300 were reimbursement for attorney fees in connection with the establishment of a limited liability company and the transfer of property to the limited liability company. DeepRock speculates that the $6000 and $300 payments could not have been for setting up a limited liability company and transferring the property because DeepRock contends that the attorney fees for this work was $2,253.50 plus $1,496 for total fees of $3,749.50.

{¶58} We have reviewed Bailey's deposition testimony and related exhibits and do not find any inconsistency in his testimony about the $6,000 and $300 payments. Bailey incurred expenses and attorney fees for two different legal services: (1) those associated with setting up the Bailey Homestead LLC and related property transfers to the Bailey Homestead –which appear to exceed $11,000 and (2) those associated with

probating his mother's estate – which may not have exceeded $2,253.50. In his affidavit, Bailey testified that "WES * * * issued checks in the amount of $6,000 and $300 to Bailey Homestead, which I understood to be reimbursement for attorney's fees incurred * * * in connection with the establishment of the limited liability company and the transfer of the Property to that limited liability company." In his deposition, Bailey testified that the $6,000 check was "paid for the LLC to get established and it reimbursed what was taken out that was supposed to be transferred in." DeepRock's counsel showed Bailey a letter from attorneys who were handling the probate estate of his mother, Hattie Grace Bailey, which stated that the probate court had approved their attorney fees and the total amount due is $2,253.50. The letter also discussed the final steps needed to finalize the estate. Bailey testified that he did not know if $2,253.50 was the total amount of attorney fees or if there were additional bills associated with handling her probate estate. Regardless, from the face of the letter, which is marked "RE: Estate of Hattie Grace Bailey" the $2,253.50 were fees associated with the probate of the Hattie Bailey estate. Bailey also testified that attorney fees in the sum of $1,496 were incurred to set up the Bailey Homestead LLC and that an additional $10,000 in expenses were incurred to purchase and transfer a sibling's interest in the Property, making these total costs in excess of $11,000.

{¶59} DeepRock argued that because the $2,253.50 in probate estate attorney fees and the $1,496 in the initial attorney fees associated with setting up the LLC did not add up to $6,000, then the $6,000 payment could not possibly have been for attorney fees. And because, in his deposition, Bailey agreed that mathematically the two attorney fee figures did not add up to $6,000, DeepRock claims he is blatantly lying about the purpose of the $6,000 payment. However, Bailey's affidavit states that the $6,300 was

reimbursement for attorney's fees to set up the limited liability company and also reimbursement for the transfer of the Property to the limited liability company, which appears to include a $10,000 expense associated with a sibling buyout.[7] And, in his deposition, he qualified his responses, stating that he did not know the total amount of attorney fees associated with his mother's estate or the total attorney fees associated with the Bailey Homestead LLC.

{¶60} Again, as with the others, we find Bailey's affidavit does not contain material inconsistencies; certainly not any inaccuracies that would constitute blatant falsehoods intended to perpetuate a fraud under Civ.R. 56(G). We have reviewed all the arguments DeepRock made in its first motion to strike, even those we have not discussed here in detail, and we find nothing that constitutes bad faith. We affirm the trial court's decision denying DeepRock's motion to strike the affidavits of Deem, Johnson, and Bailey. However, we do so on alterative substantive grounds, not for mootness. As with the as-built survey, we will consider the affidavits of Deem, Johnson and Bailey in determining the merits of the appeal and cross-appeal.

### D. Deem's Supplemental Affidavit in Reply

{¶61} DeepRock's second motion to strike addressed Deem's supplemental affidavit submitted with appellees' reply brief. DeepRock argued that Civ.R. 56 does not permit a party to obtain summary judgment by "ambush" by introducing new arguments or evidence for the first time in a reply brief. DeepRock also argued that the affidavit

---

[7] Bailey's affidavit can be read two ways grammatically: (1) The $6,300 was to reimburse legal fees associated with setting up the LLC and legal fees associated with the transfer of Property to the LLC or (2) The $6,300 was to reimburse for legal fees associated with setting up the LLC and to reimburse for the transfer of the Property to the LLC. In light of his deposition testimony it would appear that the latter reading is the one intended.

should be stricken under Evid. R. 1002 and 1004 because Deem destroyed documents in bad faith. Appellees responded that Deem's supplemental affidavit did not raise any new grounds and was submitted to rebut arguments DeepRock raised in its memorandum in opposition and that there was no evidence Deem destroyed documents.

{¶62}  In its appellate brief, DeepRock focuses its argument on its motion to strike affidavits on bad faith grounds under Civ.R. 56(G) and did not specifically address the supplemental Deem affidavit submitted with the reply memorandum. However, because its assignment of error broadly addressed both motions to strike, we will address it.

{¶63}  Where the affidavit does not raise new grounds and is submitted to counter evidence in a memorandum in opposition, there "is no general prohibition against affidavits being timely submitted with reply briefs, but instead, is a practice that has been utilized in other cases." *Cashlink, L.L.C. v. Mosin, Inc.*, 10th Dist. Franklin No. 12AP-395, 2012-Ohio-5906, ¶ 11.  Here Deem's supplemental affidavit addresses issues that were previously raised in the case. The parties had knowledge that Deem had recorded some right-of-way easements and retained 11 others after WES failed to pay some of Deem's invoices. The parties were also aware that Johnson and Bailey Homestead refused to execute easements on the Properties.  Deem gave deposition testimony concerning the 11 rights-of-way and testified that none of them were from Johnson or Bailey Homestead. Deem also testified that he recorded memoranda of options with at the recorder's office. He submitted copies of those with his affidavit. These were public records directly related to DeepRock's pipeline, not "ambush evidence."

{¶64}  Additionally, there is no evidence that Deem lost or destroyed documents in bad faith. Deem testified that he had turned them over to his attorney several years

earlier and had not seen them since that time. Therefore, under Evid.R. 1004(1), the original 11 rights-of-way are not required because they have been lost or destroyed without evidence of bad faith.

{¶65} Again, we find that the trial court erred as a matter of law when it waited to rule on, then denied as moot, DeepRock's motion to strike Deem's supplemental affidavit. However, we find the error harmless because the motion to strike was properly denied. The affidavit did not raise new grounds, was rebuttal evidence, and was not barred under Evid.R. 1004(1).

{¶66} In sum, we find that the trial court erred when it denied as moot DeepRock's motions to strike. However, it was harmless error because the motions were properly denied on substantive grounds. When reviewing the parties' remaining assignments of error, we will consider, as the trial court did, the court-ordered as-built survey, both Deem affidavits, and the Johnson and Bailey affidavits. *See Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 604 N.E.2d 138 (1992). We overrule DeepRock's second assignment of error.

V. DeepRock's Appeal of Summary Judgment

A. Standard of Review

{¶67} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long–Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

**{¶68}** Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293, 662 N.E.2d 264. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E). *Am. Express Bank, FSB v. Olsman*, 2018-Ohio-481, 105 N.E.3d 369, ¶ 10-11 (4th Dist.).

**{¶69}** For its first assignment of error, DeepRock contends that the trial court erred in issuing its decision on the summary judgment motions. DeepRock identified four issues: (1) the dismissal of its easement by estoppel claim; (2) the granting of appellees' trespass claims; (3) the dismissal of its claim against the Forté Easements; and (4) the dismissal of its tortious interference with business relationships, tortious interference with contracts, and civil conspiracy claims.

### B. Easement by Estoppel

**{¶70}** DeepRock alleged that Johnson and Bailey Homestead, the Landowners, were aware of WES's efforts to build a pipeline, consented to its location and construction on their Properties, and never objected. Therefore, DeepRock contended that it has an easement by estoppel. DeepRock did not seek summary judgment on its easement by estoppel claim; the Landowners and Forté sought summary judgment that this claim be dismissed.

**{¶71}** As an initial matter, DeepRock brought an easement by estoppel claim because of two important undisputed facts: (1) DeepRock's pipeline crosses the Landowners' Properties and (2) DeepRock (and the pipeline's prior owner, WES) did not have recorded written easements from the Landowners allowing the pipeline to cross the Properties.

**{¶72}** The Supreme Court of Ohio recognizes only three ways to create an easement: by deed, by prescription, or by implication. We recently discussed the existence of the equitable remedy of estoppel to create an easement:

> This court and other Ohio appellate courts have recognized easements by estoppel. *See Pinkerton*, 2015-Ohio-377, at ¶ 32-33; *Northwest Ohio Properties, Ltd. v. County of Lucas*, 6th Dist. Lucas No. L-17-1190, 2018-Ohio-4239, 2018 WL 5116596, ¶ 37-42; *Von Stein v. Phenicie*, 3d Dist. Crawford

No. 3-13-18, 2014-Ohio-4872, 2014 WL 5510473, ¶ 74-77 (recognizing easements by estoppel but declining to find one under the circumstances); *Byham v. Pierce*, 2d Dist. Montgomery No. 13206, 1992 WL 127714, *2-3 (June 9, 1992). We have stated: "A landowner cannot remain silent and permit another to spend money *in reliance on a purported easement*, when in justice and equity the landowner should have asserted his conflicting rights. If he fails to object, under these circumstances the landowner is estopped to deny the easement." (Emphasis added.) *Pinkerton* at ¶ 32. This standard is consistent with *Yeager, Kallner*, and the purpose of equitable estoppel " 'to prevent actual or constructive fraud and to promote the ends of justice.' " *Doe*, 116 Ohio St.3d 538, 2008-Ohio-67, 880 N.E.2d 892, at ¶ 7, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990).

*Fling v. Daniel*, 2019-Ohio-1723, 130 N.E.3d 319, ¶ 23 (4th Dist.) ("our research has not revealed any cases in which the Supreme Court of Ohio has explicitly or implicitly recognized easements by estoppel, it has also not revealed any cases in which that court declined to recognize such an easement despite the presence of actual or constructive fraud"). "The party seeking to establish an equitable easement must show (1) a misrepresentation or fraudulent failure to speak, and (2) reasonable detrimental reliance. Courts are generally reluctant, however, to find an easement by estoppel on the basis of passive acquiescence." (Citations omitted.) *Arkes v. Gregg,* 10th Dist. Franklin No. 05AP-202, 2005-Ohio-6369, ¶ 27-28.

{¶73} The court in *Maloney, infra,* explained the challenges a claimant faces in proving easement by estoppel:

Claimants alleging misrepresentation not only must prove that the alleged statements were made but also must establish that those statements were actually misrepresentations. Showing reliance presents additional problems. An easement by estoppel claimant cannot rely on an assertion that may be checked easily in the public records or that is contrary to information in the claimant's possession. Moreover, the claimant must change position personally; proof of reliance by third parties does not suffice. Finally, what constitutes reliance depends on the facts and the circumstances of the particular case. Locating improvements on the dominant estate in order to take advantage of the represented easement has been held to satisfy the reliance requirement. Expending money to repair or improve a servient estate also evinces reliance.

> "Courts are reluctant to find an easement by estoppel on the basis of 'mere passive acquiescence.' Nonetheless, under certain circumstances, equity imposes an obligation to disclose information regarding the existence or location of an easement. Such a duty may be found when the servient estate owner observes the claimant improving the servient estate, but not usually when the servient estate owner stands by while the claimant improves his own property, the alleged dominant estate. Furthermore, there is authority that an obligation to speak does not arise when a claimant is already in possession of the relevant information."

*Maloney v. Patterson,* 63 Ohio App.3d 405, 410, 579 N.E.2d 230, 233 (9th Dist.1989), quoting Bruce & Ely, The Law of Easements and Licenses in Land (1988), Section 6.01.

**{¶74}** Johnson and Bailey Homestead argued that they were entitled to a dismissal of DeepRock's easement by estoppel claim because it was undisputed that they never actively misled DeepRock's predecessor that easements existed or fraudulently failed to rebut WES's belief in the existence of easements. Michael Bailey, the managing member of Bailey Homestead, provided affidavit testimony that: (1) he did not agree verbally or in writing to the installation of the pipeline on the Property, (2) there was no written document between Bailey Homestead and WES that grants an easement to WES, and (3) he informed both Deem, WES's landman, and John Jack, WES's chief executive officer, that the pipeline's presence on his Property constituted a trespass. John Jack never returned Bailey's telephone calls.

**{¶75}** Johnson also provided affidavit testimony that, although he gave two right-of-way options to WES on two of his other properties, he never gave any verbal or written authorization to WES for the construction or installation of the pipeline on the subject Property. Johnson explained that his daughter lived on the Property and, due to the size of the Property, he did not want the pipeline to negatively interfere with her enjoyment of it. Johnson also testified that he notified Deem and John Jack that the pipeline

construction constituted a trespass and that John Jack did not return his calls.  Johnson's daughter also provided affidavit testimony and photographic evidence that she witnessed and photographed the unauthorized pipeline construction in the fall of 2015 on her father's Property and telephoned her father and notified him of the activity.

**{¶76}** DeepRock argued in its memorandum in opposition that a genuine issue of material fact existed as to whether it was entitled to an easement by estoppel because, "aside from their self-serving testimony," "there is no evidence that Landowners [Johnson and Bailey Homestead] ever raised objections to the Pipeline" until a year after the pipeline was installed. DeepRock argued that the construction workers WES hired to clear, excavate and install the pipeline were not told by the Landowners that they were trespassing. DeepRock included affidavit testimony from three people who worked on the pipeline construction that stated that no landowner ever accused them of trespassing or otherwise told them that they had no authority to be on the lands during the pipeline construction.

**{¶77}** DeepRock also included an affidavit from Christyann Chavez, who testified that she was familiar with the books and records of DeepRock and the WES records DeepRock obtained through the receivership sale. Chavez testified that WES's landman, Deem, did not send any written correspondence to WES informing it that the landman had not obtained easements from Bailey Homestead or Johnson.  DeepRock also argued that WES sent Bailey Homestead several checks that Bailey did not adequately explain, and that Johnson admitted to agreeing to allow the pipeline to cross a corner of his Property. Finally, DeepRock argued that statements or omissions made by WES's

landman, Deem, prevented the Landowners from denying the existence of easements on their Properties.

**{¶78}** In reply, as rebuttal to DeepRock's argument that statements or omissions by WES's own landman Deem estopped the Landowners from denying the existence of an easement, Bailey Homestead and Johnson submitted the affidavit testimony of Deem. Deem testified that he was contacted by John Jack of WES to serve as the professional landman to obtain easements for the pipeline project. However, WES stopped paying his invoices and Deem terminated his contract with WES for nonpayment. Deem testified that Johnson refused to negotiate an easement on his Property and Bailey Homestead never agreed to negotiate an easement on the Property. As a result, Deem did not have or provide documentation to WES for easements on either the Bailey Homestead or Johnson Properties.

**{¶79}** The trial court reviewed the evidence submitted by the parties in support of and against the dismissal of the easement by estoppel claim and found, "plaintiff does not have an easement by estoppel." "The court dismisses Count V [easement by estoppel] of the First Amended Complaint * * *." Though it is not clear from the decision the rationale for the trial court's determination, our review of the evidence supports the trial court's decision to dismiss DeepRock's easement by estoppel claim.

**{¶80}** The Landowners submitted evidence that they did not agree verbally or in writing to provide an easement to WES for the pipeline to cross their Properties. They also testified that they made timely objections to the pipeline construction by contacting WES's landman, Deem, and WES's Chief Executive Officer, John Jacks. DeepRock did not provide any evidence that Bailey Homestead or Johnson made a misrepresentation

to WES or its agents concerning a pipeline easement. To the contrary, Deem submitted an affidavit in which he affirmatively stated that he did not obtain easements from Bailey Homestead and Johnson. Deem also testified that he repeatedly told WES that the pipeline trespassed across the Bailey Homestead and Johnson Properties and Deem also informed the WES receiver of the trespass prior to the receivership sale.[8] DeepRock provided no testimony from either Deem or John Jack denying that they were contacted by Bailey Homestead or Johnson with objections or concerns about the pipeline construction on their Properties. The affidavit testimony DeepRock provided from the three construction workers does not conflict with Bailey or Johnson's testimony. The law does not require that Bailey Homestead and Johnson voice their objections to the construction workers. It is sufficient that they voiced them directly to WES's landman and CEO.

{¶81} DeepRock's affidavit from Chavez also fails to establish any misrepresentation by the Landowners. Chavez testified that Deem *did not* send a written correspondence that he *had not* obtained easements from the Landowners. First, Deem was WES's agent, not Bailey Homestead or Johnson's agent. Deem's statements or lack thereof do not constitute misrepresentations by the Landowners. That WES's files contain no letter from Deem about easements from Bailey Homestead and Johnson simply means Deem made no written representations upon which WES could reasonably rely – a fact which could only hurt, not help, DeepRock's estoppel claim.

---

[8] The receivership order confirming the sale of WES assets, which DeepRock submitted in support of its summary judgment motion, shows that the parties to the receivership were aware of the easement dispute on the Bailey Homestead and Johnson Properties. Immediately after acquiring the pipeline, DeepRock was given an opportunity to conduct discovery on issues related to the easement dispute, i.e., issue a subpoena to Derow asking to inspect the 11 rights-of-way purportedly retained by Derow and/or request permission to perform an as-built survey. There is no evidence in the record that DeepRock undertook any such efforts at that time.

**{¶82}** Finally, as we addressed in reviewing DeepRock's second assignment of error, Michael Bailey explained in his deposition and in his affidavit that he understood that the payments he received from WES were reimbursements for fees and expenses associated with setting up and transferring land to the Bailey Homestead LLC. DeepRock speculates that these payments were actually for an easement, but DeepRock provided no affidavit or deposition testimony from anyone to support its speculation. "Mere speculation and unsupported conclusory assertions are not sufficient to meet the nonmovant's reciprocal burden under Civ.R. 56(E) to withstand summary judgment." *Bank of New York Mellon v. Bobo*, 2015-Ohio-4601, 50 N.E.3d 229, ¶ 13 (4th Dist.).

**{¶83}** Similarly, we addressed DeepRock's contention that Johnson gave inconsistent deposition testimony that he had verbal discussions about the pipeline possibly cutting across a 15-foot corner of his Property. This is neither an inconsistent statement nor a misrepresentation and cannot form the basis for DeepRock's estoppel defense. Even if we assume arguendo that Johnson's preliminary discussion was an actual misrepresentation, it strains reason to believe that a business entity engaged in wastewater disposal operations would rely on casual verbal discussions and word-of-mouth promises instead of properly executed easements to commence a multi-million-dollar pipeline project. The reliance must be "reasonable." "An easement by estoppel claimant cannot rely on an assertion that may be checked easily in the public records *or that is contrary to information in the claimant's possession.*" (Emphasis added.) *Maloney*, 63 Ohio App.3d at 410. WES had no written easements from Bailey Homestead or Johnson in its possession before constructing the pipeline across the Properties. If WES believed these Landowners had promised to grant easements, it could have checked its

own records and confirmed whether it had written easements from them prior to commencing pipeline construction across their Properties.

{¶84} We find that the trial court properly ruled in appellees' favor and against DeepRock on DeepRock's easement by estoppel claim. We affirm the dismissal of Count V (Easement by Estoppel) of DeepRock's First Amended Complaint.

### C. Bailey Homestead & Johnson's Trespass Claims

{¶85} DeepRock contends that the trial court erred in granting Bailey Homestead and Johnson summary judgment in their favor on their counterclaim for trespass (Count 1, Amended Counterclaims). Bailey Homestead and Johnson's counterclaims seek a declaratory judgment that the pipeline trespasses on the Bailey Homestead Property and the Johnson Property. Forté sought a declaratory judgment that the pipeline "is located on real property whereby Forté owns a general, exclusive easement." We will address the trial court's ruling on the Forté Easement separately in subpart D.

{¶86} DeepRock argues that the trial court's declaratory judgment that the pipeline trespasses on the Properties is erroneous because the trial court relied on the as-built survey, which was not properly authenticated. DeepRock also argues that it has an easement by estoppel and therefore is authorized to have its pipeline on the Properties.

{¶87} "The essential elements necessary to state a cause of action in trespass are: (1) an unauthorized intentional act, and (2) entry upon land in the possession of another." *Brown v. Scioto Cty. Bd. of Commrs.,* 87 Ohio App.3d 704, 716, 622 N.E.2d 1153, 1161 (4th Dist.1993). The parties do not contest that Bailey Homestead and Johnson are the landowners of the Properties at issue. The material issue is whether DeepRock's pipeline crosses the Properties without permission.

{¶88} We have already determined that the trial court properly denied DeepRock's motion to strike the court-ordered as-built survey. The survey was properly authenticated and was considered by the trial court in reviewing the parties' summary judgment motions.[9] The survey shows that the pipeline crosses Bailey Homestead Property and crosses 1013 linear feet of that parcel and the pipeline crosses Johnson's Property and crosses 197 linear feet of that parcel. The survey also contains notes concerning the survey methods used.

{¶89} DeepRock submitted an affidavit from Mr. Smith, the owner of the court-ordered surveying company, that included a letter he sent explaining that he was not the person who performed the survey and he had only limited involvement in the project. Thus, he contended that the initial "authentication" affidavit sent by appellees' counsel, which named Mr. Smith as the surveyor, was false and misstated. Most importantly, Mr. Smith's affidavit testimony *does not* dispute the authenticity or accuracy of the survey, dispute the survey's findings, or criticize the methods set out in the survey notes. Thus, DeepRock provided no alternate survey or expert witness testimony that conflicted with, disputed, or provided alternative boundary lines to those set out in the survey. *See Viars v. Ironton,* 4th Dist. Lawrence No. 16CA8, 2016-Ohio-4912, ¶ 34 (summary judgment was appropriate where opponent "argued that there were genuine issues of material fact about his northern property line" but "did not hire a professional surveyor to survey his property and presented no alternative northern boundary line for the trial court's consideration").

---

[9] The trial court found that the appellees did not present sufficient "verification of the accuracy of the survey." However, as we discussed in addressing the denial of the motion to strike the survey, the survey was properly authenticated and shows that the pipeline crosses the Properties. DeepRock produced no evidence to contradict the accuracy of the survey, nor did it propose alternate boundaries. Crucially, DeepRock admitted in its reply to the counterclaims that the pipeline crosses the Properties. Any dispute over the linear footage findings in the survey goes to the amount of trespass damages to which the Landowners might be entitled as requested in Count 2 of Amended Counterclaims.

{¶90} Moreover, DeepRock admitted in its reply to Bailey Homestead and Johnson's counterclaims that the pipeline crossed these properties: "Plaintiff admits that the Pipeline crosses into the Johnson Property * * * Plaintiff admits that the Pipeline crosses into the Bailey Homestead Property and that Plaintiff owns and operates the Pipeline * * *."

{¶91} DeepRock argues on appeal that Forté and the Landowners' trespass claims are "incompatible" because if DeepRock is trespassing and the Forté Easements are valid, "then the trespass claim belongs to Forté," not the Landowners. DeepRock cites no case law to support this novel argument that a property owner that has granted an easement loses its right to enforce trespass claims against other, unauthorized intruders. We reject it.

{¶92} The trial court properly issued a declaratory judgment that DeepRock, as the current owner of the pipeline, is trespassing on the Bailey Homestead and Johnson Properties (Count 1, Amended Counterclaim).

### D. Forté Easements

{¶93} DeepRock brought a declaratory judgment claim to have the Forté Easements declared "null and void as a result of them being established in contravention of the Stay Order and Sales Procedure Injunction" (Count 2, First Amended Complaint). Forté brought a declaratory judgment claim that "the subject Pipeline is located on real property whereby Forté owns a general, exclusive easement (Count 1, Amended Counterclaim).

{¶94} DeepRock argued that it was entitled to summary judgment that the Forté Easements were invalid for three reasons: (1) the doctrines of champerty and/or

maintenance; (2) they violated the WES receivership stay order; and (3) they do not define with sufficient accuracy the location of the right-of-way.

{¶95} The trial court granted Forté's declaratory judgment and dismissed DeepRock's. The trial court rejected DeepRock's arguments that the Forté Easements were invalid: (1) as "champerty and maintenance" or (2) for violating the stay order issued in WES's receivership case. The trial court also rejected DeepRock's contention that the easements were invalid because they were not specifically described.

{¶96} The Supreme Court of Ohio defines champerty and maintenance as follows:

> "Maintenance" is assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case. "Champerty" is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues. "The doctrines of champerty and maintenance were developed at common law to prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of the law."

> The ancient practices of champerty and maintenance have been vilified in Ohio since the early years of our statehood. We stated in *Key* that maintenance "is an offense against public justice, as it keeps alive strife and contention, and perverts the remedial process of the law into an engine of oppression." We have held the assignment of rights to a lawsuit to be void as champerty We have also said "that the law of Ohio will tolerate no lien in or out of the [legal] profession, as a general rule, which will prevent litigants from compromising, or settling their controversies, or which, in its tendencies, encourages, promotes, or extends litigation." (Citations omitted.)

*Rancman v. Interim Settlement Funding Corp.*, 99 Ohio St.3d 121, 2003-Ohio-2721, 789 N.E.2d 217, ¶ 10-11.

{¶97} DeepRock argues that Forté is "an officious intermeddler with no bona fide interest in this dispute," is "funding the litigation," will "share recovery" with the

Landowners, and "is stirring up the type of strife that the doctrines of champerty and maintenance are designed to avoid."

**{¶98}** Yet, Forté obtained pipeline easements from Johnson and Bailey Homestead in late 2016 and publicly recorded them in 2016, before DeepRock purchased the pipeline in January 2017. Then in July 2017, DeepRock – not Forté – brought an action naming Forté as a defendant. Because Forté has valid easements on the relevant Properties, it has a bona fide interest in the case and because it was sued by DeepRock, it is a party to the litigation. The trial court's review of the applicable caselaw was correct and it soundly rejected this argument.

**{¶99}** Next DeepRock argued that the Forté Easements violated the WES receivership stay order because Forté acquired the easements "to advance potential claims against WES" and "diminish the value of WES' assets through a threat of litigation." DeepRock provided no evidence that any party filed a contempt motion against Bailey Homestead, Johnson, or Forté in the receivership case and no evidence that the receivership court issued any orders holding these parties in contempt for any stay violations. Moreover, according to DeepRock, the stay order was designed to protect WES assets. WES did not own the Bailey Homestead or Johnson Properties – those Properties were not WES's assets. WES did not have recorded easements across the Bailey Homestead and Johnson Properties. Bailey Homestead and Johnson were free to do as they wished with their properties and could sell them, lease them, or grant easements to Forté. In essence, DeepRock's argument is that because WES's pipeline crossed their Properties, the Landowners could not give valid easements to anyone else

as that might result in trespass litigation and a devaluation of the pipeline. The trial court properly rejected this argument.

{¶100}     Last, DeepRock argues that the easements were invalid because they violated the statute of frauds for failing to identify the location of the rights-of-way. DeepRock is not a party to the Forté Easements and lacks standing to raise the statute of frauds. "As a matter of common law contract, 'a defense under the statute of frauds is personal to the parties to the transaction and cannot be availed of by third parties.' " *Blain's Folding Serv., Inc. v. Cincinnati Ins. Co.,* 2018-Ohio-959, 109 N.E.3d 177, ¶ 4-5 (8th Dist.), quoting *Texeramics v. United States*, 239 F.2d 762, 764 (5th Cir.1957); *Legros v. Tarr,* 44 Ohio St.3d 1, 8, 540 N.E.2d 257 (1989), quoting *Bradkin v. Leverton*, 26 N.Y.2d 192, 199, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970) (" 'where a third party is concerned, the Statute of Frauds provides no defense to him' "); *Edwards Mfg. Co. v. Bradford Co.*, 294 F. 176, 181 (2d Cir.1923) ("the defense of the statute of frauds is personal to the contracting parties"); *see also Delaware Golf Club, LLC v. Dornoch Estates Homeowners Assn., Inc.,* 5th Dist. Delaware No. 19 CAE 04 0027, 2020-Ohio-880, ¶ 43 ("If there is no specific delineation of the easement, or if the document is ambiguous, the court must then look to the circumstances surrounding the transaction in order to determine the intent of the parties" – the court does not declare the easement invalid). The trial court properly rejected this argument.

{¶101}     The trial court properly dismissed DeepRock's declaratory judgment claim that the Forté Easements were invalid (Count 2, First Amended Complaint) and granted Forté's declaratory judgment that DeepRock's pipeline is located on the Bailey

Homestead and Johnson Properties whereby Forté owns a general, exclusive easement (Count 1 – Amended Counterclaim).

### E. Tortious Interference with Business Relationships, Tortious Interference with Contracts, and Civil Conspiracy

**{¶102}** DeepRock brought claims against Derow, Deem, and Forté alleging that WES, and DeepRock as its successor, held ongoing business relationships and contracts with Bailey Homestead and Johnson for easements through the Properties. DeepRock alleged that Deem, Derow and Forté contacted Bailey Homestead and Johnson and induced them to discontinue their relationships and contracts with DeepRock and, instead, provide easements to Forté. DeepRock alleged that this behavior constituted tortious interference with business relationships, tortious interference with contracts and a civil conspiracy (Counts 6, 7, and 8, First Amended Complaint).

**{¶103}** Deem, Derow, and Forté moved for summary judgment and sought the dismissal of these claims on the ground that there was no contract and/or business relationship between WES and the Landowners and the civil conspiracy claim requires the existence of an unlawful act independent from the actual conspiracy, which does not exist. DeepRock opposed the motion, arguing that the payments that WES made to the Landowners established the existence of a business relationship and there remained genuine issues concerning whether written easements existed between WES and the Landowners. DeepRock also argued that Forté engaged in extortion when it asked DeepRock to either move the pipeline or provide monetary compensation to Forté and the Landowners for the use of their Properties.

**{¶104}** The trial court found that the Landowners granted Forté easements on their Property in late 2016, a year after the pipeline construction was complete. During

that time WES did not have a business relationship with the Landowners, the parties did not have a contract at any time, and WES was a trespasser. For these reasons the trial court dismissed DeepRock's tortious interference with business relationships/contracts claims and the civil conspiracy claim.

**{¶105}** "The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 1999-Ohio-260, 707 N.E.2d 853, paragraph one of the syllabus.

**{¶106}** DeepRock's claim for tortious interference with contract fails because it is undisputed that the Landowners did not grant easements to WES. Both Bailey Homestead and Johnson testified that they did not grant easements to WES. Deem testified that he did not obtain written easements from the Landowners for the WES pipeline. DeepRock has provided no written easements or testimony that written easements existed between the Landowners and WES. Because DeepRock has failed to prove the existence of a contract, the trial court properly dismissed its tortious interference with contract claim (Count 7) on the ground that the parties never had a contract at any time.

**{¶107}** "The elements of tortious interference with a business relationship are: (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Martin v. Jones*, 2015-Ohio-3168, 41 N.E.3d 123, ¶ 63 (4th Dist.).

{¶108}     Johnson testified that he agreed to allow WES to cross two other properties (not the subject of this lawsuit) and he received payments from WES. Johnson also testified that he allowed WES to park equipment on the disputed Property and in exchange received a $500 payment. However, Johnson testified that he discovered that WES constructed the pipeline on his Property without his permission. He contacted WES's landman, Deem, and objected. Johnson also testified that he had several conversations about WES's trespass with WES's CEO John Jack. Johnson testified that he became increasingly frustrated with WES as he could not get the situation resolved. He described his final discussion with WES, which occurred in late 2015 or early 2016:

> Johnson:  * * * The last conversation that I had with Jack was one day he decided to answer the phone; and when he decided to answer the phone, I told him, I said, 'You trespassed on me. You need to do something about this.' And he said, 'It's my pipeline.' And I said, 'Stay the F off. You're trespassing.' From then on, I never talked to John Jack again.

{¶109}     Construing the evidence most strongly in DeepRock's favor, we find that Johnson had a business relationship with WES during the construction of the pipeline beginning in May 2015 and through the fall of 2015, which ended in November or December 2015 when Johnson discovered the pipeline had been built on his Property, expressed his objections, and was unable to get a meaningful response from WES.

{¶110}     Likewise, Bailey Homestead appeared to have a business relationship with WES in the summer and fall of 2015 as reflected by the testimony of Michael Bailey about WES giving him financial assistance with the estate, the establishment of the LLC, and related property transfer expenses.  However, like the Johnson business relationship, WES's business relationship with Bailey Homestead

disintegrated after WES constructed the pipeline on the Property without permission and Bailey objected but could not get a satisfactory response from WES.

{¶111}     Bailey testified that he was not contacted by Forté until December 2016, a year after their business relationship with WES ended and Johnson testified that he was first introduced to Forté sometime after WES was placed in receivership, which occurred in July 2016.  Therefore, by the time both Johnson and Bailey Homestead were introduced to Forté, WES no longer had a business relationship with either of them.  Because there was no business relationship at the time Forté became involved in late 2016, the trial court properly granted summary judgment dismissing DeepRock's tortious interference with business relationship claim (Count 6, First Amended Complaint).

{¶112}     To prove a civil conspiracy claim, DeepRock must show: (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy. *Mender v. Chauncey,* 2015-Ohio-4105, 41 N.E.3d 1289, ¶ 29 (4th Dist.).

{¶113}     DeepRock alleged that the underlying tortious interference claims constituted the unlawful acts independent from the conspiracy itself and provide the fourth element of its civil conspiracy claim. However, we affirmed the trial court's dismissal of the tortious interference with business relationship/contracts claims. Because those claims were properly dismissed, we find that the trial court did not err in granting summary judgment and dismissing DeepRock's dependent claim of civil conspiracy (Count 8). A civil action for civil conspiracy requires a viable claim distinct from the conspiracy in order

for the conspiracy claim to survive. Because the tortious interference claims were properly dismissed, there can be no surviving civil conspiracy claim.

{¶114}      Additionally, we reject DeepRock's contention that its civil conspiracy claim is based on an alleged extortion by Forté. In our previous determinations, we found that: (1) the pipeline crosses the Properties; (2) DeepRock is a trespasser because it has no written easements and no easements by estoppel; and (3) the Forté Easements are not invalid. Forté and the Landowners asked DeepRock to either move the pipeline or provide monetary compensation for the use of their Properties. This is not extortion, but the lawful protection of their property rights and interests. *See* R.C. 2905.11 (Extortion).

{¶115}      Construing the record and all inferences from it in DeepRock's favor, we find that no genuine issues of material fact exist and appellees are entitled to summary judgment in their favor and against DeepRock for the dismissal of DeepRock's easement by estoppel, tortious interference with business relationships, tortious interference with contract, and civil conspiracy claims – Counts 5, 6, 7, and 8 of First Amended Complaint. Appellees are entitled to summary judgment in their favor on their counterclaim for a declaratory judgment that DeepRock is a trespasser because its pipeline crosses the Properties on which Forté owns a general exclusive easement – Count 1 of the First Amended Counterclaims. And, appellees are entitled to summary judgment in their favor dismissing DeepRock's declaratory judgment claim seeking to invalidate the Forté Easements – Count 2 of First Amended Complaint. We affirm the trial court's judgment on these claims. DeepRock's first assignment of error is overruled.

VI. Cross-appellants' Appeal of Summary Judgment

**{¶116}** For their sole assignment of error, cross-appellants contend that the trial court erred in granting summary judgment to DeepRock on DeepRock's request for a declaratory judgment that WES assets were sold free and clear of any claims the cross-appellants had against WES assets, "including any claim for trespass and the Forté Easements" (Count 3, First Amended Complaint).

A. Standard of Review

**{¶117}** The de novo standard of review applicable to our review of DeepRock's first assignment of error set out in Part V, A, is also applicable to our review of the cross-appellants' sole assignment of error.

B. Declaratory Judgment that WES Assets were Sold Free and Clear
of Liens, Claims and Encumbrances

**{¶118}** In its motion for partial summary judgment, DeepRock argued that it was entitled to summary judgment on its request for a declaratory judgment that it acquired WES's assets free and clear of any claims, liens or encumbrances because: (1) the Forté Easements are invalid (a claim we find was properly rejected and dismissed, the Forté Easements are not invalid) and (2) Deem, Derow and the Landowners "have asserted claims that are barred by * * * sales-related orders in the receivership proceeding." DeepRock argued that "the only manner for recovery by unsecured creditors of WES was through the receivership claims process that they [the cross-appellants] did not participate in."

**{¶119}** DeepRock submitted the affidavit of WES's receiver's attorney, Myron Terlecky, who explained the receivership claims approval process. According to Mr. Terlecky's testimony and documents and orders entered in the receivership case, the

receivership court approved a claim approval process so that creditors who had claims against WES could file them. Deem, Derow, Bailey Homestead, and Johnson did not file a claim in the WES receivership.   Also, as part of the receivership case, the sale of WES assets occurred on December 6, 2106 to DeepRock.[10] Shortly after the sale, the receivership court issued an order confirming that WES assets "will be transferred to Buyer free and clear of all liens, claims and encumbrances arising either before or after the appointment of the Receiver. Any such liens shall attach to the proceeds of sale, in their respective amounts and priority."  The order also provided that DeepRock "shall not be deemed a successor of [WES] and shall incur no successor liability for any obligation of [WES] as a result of the sale of the Acquired Assets to [DeepRock], other than those related to the Assumed Liabilities."

{¶120}        DeepRock argued that the sale of the WES assets to it cut off all claims of WES's creditors against the assets. DeepRock cited *Park Natl. Bank v. Cattani,* 187 Ohio App.3d 186, 189, 2010-Ohio-1291, 931 N.E.2d 623 (12th Dist.). In *Cattani,* Park National Bank filed a complaint to foreclose on a mortgage on real property consisting of a gas station, convenience store and fast-food restaurant. A junior lienholder, Lykins Oil Company, filed an answer and cross-claim in the foreclosure action asserting an interest in the real property via its junior lien. A receiver was appointed and the trial court entered an order authorizing the receiver to sell the real property and personal property " 'free and clear of all liens and encumbrances,' whereby any claims by those with an interest in the property would be subsequently attached to the net proceeds in order of priority." *Id.* at ¶

---

[10] A company known as Funds Protection Investment, LLC was the successful bidder that eventually assigned its bid to DeepRock. This transaction is not relevant to this litigation and, for simplicity, we refer to DeepRock as the successful bidder and buyer.

6. Lykins Oil Company appealed arguing that the order to sell the real property free and

clear of its lien was contrary to law. The appellate court disagreed:

> The Supreme Court of Ohio has interpreted R.C. 2735.04 " 'as enabling the trial court to exercise its sound judicial discretion to limit or expand a receiver's powers as it deems appropriate.' " *Norris v. Dudley,* Franklin App. No. 07AP–425, 2007-Ohio-6646, 2007 WL 4340263, ¶ 21, quoting *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 74, 573 N.E.2d 62. As a result, because R.C. Chapter 2735 "does not contain any restrictions on what the court may authorize when it issues orders regarding receivership property," we find that this includes the power to authorize a receiver, under certain circumstances, to sell property at a private sale free and clear of all liens and encumbrances. *Quill v. Troutman Ents., Inc.,* Montgomery App. No. 20536, 2005-Ohio-2020, 2005 WL 994676, ¶ 34; see also *Ohio Director of Transp. v. Eastlake Land Dev. Co.,* 177 Ohio App.3d 379, 2008-Ohio-3013, 894 N.E.2d 1255, ¶ 49–51 (Gallagher, P.J., dissenting); see, e.g., *Regions Bank v. Egyptian Concrete Co.* (E.D.Mo.2009), No. 4:09–CV–1260 CAS, 2009 WL 4431133 (stating that "it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims"); *John T. Callahan & Sons Inc. v. Dykeman Elec. Co. Inc.* (D.Mass.2003), 266 F.Supp.2d 208, 222 (noting that "notwithstanding the absence of an express power to sell assets free and clear of claims," the court had the implied power to sell assets free and clear of creditors' claims in a private sale); but see *Au v. Au Rustproofing Ctr., Inc.* (July 3, 1984), Richland App. No. CA–2227, 1984 WL 4959.

*Cattani* at ¶ 13 (footnote omitted). Like the receiver in *Cattani,* the WES receiver was

authorized to sell the WES assets free and clear of all liens, claims, and encumbrances

arising before or after the appointment of the receiver. Like *Cattani*, any claim by those

with an interest in the assets would attach to the net proceeds in order of priority.

{¶121}      Thus, if Deem, Derow, Bailey Homestead, or Johnson had any liens,

claims or encumbrances against WES assets, those would have been removed from the

assets and attached to the net proceeds from the sale. However, there was no evidence

presented in this action by any of these parties that they had any lien, claim, or

encumbrance against WES's assets.  Deem, Derow, and the Landowners presented no

evidence of any security agreements, mechanic's liens, mortgages, judicial liens, or other claims to WES's assets. A lien is "a charge or security or encumbrance upon property. A claim or charge on property for payment of some debt, obligation or duty. Qualified right of property which a creditor has in or over specific property of the debtor, as security for the debt or charge or for performance of some act. * * *The word 'lien' is a generic term and, standing alone, includes liens acquired by contract or by operation of law." (Citations omitted.) Black's Law Dictionary (5th Ed.1979). A claim against an asset is an action *in rem*, i.e., an action against the property. *Guernsey Bank v. Milano Sports Ents. L.L.C.*, 177 Ohio App.3d 314, 2008-Ohio-2420, 894 N.E.2d 715, ¶ 68 (10th Dist.) (claim to enforce mechanic's lien is a claim against property). An encumbrance is " 'a claim, lien, charge, or liability attached to and binding real property; e.g. a mortgage * * *.' " *Griffin v. First Natl. Acceptance Co.*, 11th Dist. Trumbull No. 2012-T-0075, 2013-Ohio-4302, ¶ 25, quoting *Black's Law Dictionary* (6th Ed.1991).

{¶122}     We find that although WES's assets were sold free and clear of liens, claims and encumbrances, this finding has no relevance to this action. Deem, Derow, and the Landowners are not asserting any liens, claims or encumbrances against the WES assets.

{¶123}     However, Deem and Derow are seeking to recover monies owed them by WES for unpaid invoices in the sum of $10,716.85.  We agree that those claims could have been filed in the receivership proceeding. The claims process described in Mr. Terlecky's affidavit testimony and related exhibits stated that the purpose of the receivership was to liquidate WES's assets in an attempt to maximize returns to creditors. Deem and Derow could have submitted a claim and attached the invoices as

documentation of the claim to be considered in any distribution of funds at the conclusion of the receivership case.

{¶124}     DeepRock is not liable to Deem and Derow for the unpaid invoices, either as a successor-in-interest to WES or via the contract between WES and Derow. Derow and Deem alleged that they terminated the contract with WES in April/May 2016, after WES failed to pay the invoices within the 15-day time period set out in a demand letter by Derow's attorney. In the Asset Purchase Agreement attached to DeepRock's First Amended Complaint, DeepRock specifically identified the ongoing contractual obligations of WES, as well as the liabilities it was assuming under Schedule 1.1(a) and Schedule 1.1(b).  Derow, Deem and WES's contract for services rendered during the pipeline's planning and construction phase was not identified as an Assumed Contract under Schedule1.1(a). And, the unpaid invoices were not listed as an Assumed Liability under Schedule 1.1(b). Therefore, DeepRock has no rights or obligations in the contract between Deem, Derow and WES.

{¶125}     We also find that Bailey Homestead and Johnson had claims against WES for trespass that arose when WES constructed the pipeline across the Properties. WES continued to trespass until the pipeline was sold in the receivership and WES no longer owned it. Those claims for trespass and related damages caused by WES's clearing the land and constructing and maintaining the pipeline on the Properties up through the receivership sale of the pipeline cannot be brought against DeepRock as a successor to WES. The order confirming the sale specifically provided that DeepRock is not a successor of WES and shall incur no successor liability for any of WES's obligations. DeepRock argued that these pre-sale trespass claims against WES are barred in its

motion for partial summary judgment: "The Landowners claims for trespass by WES are also without merit, as such claims accrued prior to the sale of WES' assets to DeepRock."

{¶126}     However, after DeepRock purchased the pipeline, DeepRock took no steps to remove the pipeline off the Bailey Homestead and Johnson Properties. DeepRock's trespass began when it acquired the pipeline and continues for as long as the pipeline crosses the Properties without permission.  Bailey Homestead and Johnson have the right to bring trespass claims for damages against DeepRock commencing on the date DeepRock acquired the pipeline and up to the time that either DeepRock obtains permission for the pipeline to cross the Properties or removes the pipeline off the Properties.

{¶127}     There is a great deal of confusion among the parties about the meaning of the trial court's decision on DeepRock's declaratory judgment claim that the assets were sold free and clear (Count 3, First Amended Complaint). The Landowners argue that the effect was to condemn and take possession of their Properties because they interpret it as barring all trespass claims against DeepRock.  We understand the confusion because, after the somewhat confusing discussion of this claim, the trial court broadly states, "The Court denies defendants' motion and grants plaintiff's motion on Count III of the First Amended Complaint." This could be interpreted as barring all trespass claims against DeepRock – both pre-receivership sale and post-receivership sale of the pipeline. However, we believe the trial court intended to reach the same result that we have reached here. The trial court stated that Bailey Homestead, Johnson and Forté's pre-sale claims against WES cannot be asserted against DeepRock:  "In sum, plaintiff's count against Bailey, Johnson and Forté is granted as of the date of the

confirmation of sale." The trial court allowed Bailey Homestead, Johnson and Forté to bring post-sale trespass claims against DeepRock and will allow the jury to decide whether DeepRock's continuing trespass is willful and the amount of trespass-related damages: "However, it is an issue for the jury if Forté, Bailey and Johnson's claims continues to a date beyond the sale confirmation date." Therefore, we affirm the portion of the trial court's judgment that is in accordance with our decision, and reverse the portion that might be read as a dismissal of the cross-appellants' post-sale trespass claims against DeepRock. We sustain, in part, the cross-appellants' sole assignment of error.

## VII. CONCLUSION

{¶128}     The trial court erred as a matter of law when it dismissed as moot DeepRock's motions to strike. However, we find the error harmless because the motions were properly denied on alternative grounds. We affirm the trial court's decision granting summary judgment to appellees/cross-appellants and dismissing appellant's/cross-appellee's claims for invalidity of the Forté Easements, easements by estoppel, tortious interference with business relationships, tortious interference with contracts, and civil conspiracy (Counts 2, 5, 6, 7, and 8 of the First Amended Complaint) and granting appellees/cross-appellants summary judgment in their favor on their declaratory judgment claim for trespass (Count 1, Amended Counterclaims). We affirm, with modification, the trial court's decision granting summary judgment to appellant/cross-appellee on its claim for declaratory judgment that it purchased WES assets free and clear of liens, claims, and encumbrances against the assets (Count 3, First Amended Complaint). The modification clarifies that the appellees/cross-appellants' trespass claims

against appellant/cross-appellee that arose after the receivership sale of the pipeline are

allowed to proceed. We affirm, with modification, the judgment of the trial court.

JUDGMENT AFFIRMED, AS MODIFIED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED, AS MODIFIED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
        Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**