[Cite as *Southeastern Equip. Co., Inc. v. D.J. Group, Inc.*, 2025-Ohio-2936.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| Southeastern Equipment Co., Inc., | : | Case No. 24CA11 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| v. | : | |
| D.J. Group, Inc., et al., | : | |
| | | **RELEASED 8/14/2025** |
| Defendants-Appellants. | : | |

_____

<u>APPEARANCES</u>:

Richard D. Welch, Law Offices of Richard D. Welch, LLC, McConnelsville, Ohio, for appellants.

Karen S. Hockstad, Joseph K. Merical, and Gregory P. Mathews, Dinsmore & Shohl LLP, Columbus, Ohio, for appellee.

_____

Hess, J.

**{¶1}** D.J. Group, Inc. ("DJG") and Jerry M. Welch ("Welch") appeal from an amended order of the Washington County Court of Common Pleas granting Southeastern Equipment Co., Inc.'s ("Southeastern") motion for a more definite statement, to strike portions of counterclaim, and to dismiss counterclaim, and denying DJG and Welch's motion to strike and dismiss. DJG and Welch present two assignments of error asserting the trial court committed reversible error by dismissing certain claims they made against Southeastern. For the reasons which follow, we conclude the order being appealed is not a final, appealable order. Therefore, we lack jurisdiction to address the merits of this appeal and dismiss it.

## I. FACTS AND PROCEDURAL HISTORY

### A. Pleadings

**{¶2}** In March 2023, Southeastern filed a complaint against DJG and Welch. The complaint alleged breach of contract claims against DJG for its failure to pay amounts due under equipment rental contracts for a Case excavator and a Kobelco excavator. The complaint also alleged an unjust enrichment claim against DJG for accepting rental equipment services from Southeastern without compensating it. In addition, the complaint alleged Welch was liable for Southeastern's damages under a personal guarantee of payment. Southeastern attached to the complaint copies of the alleged Case excavator contract (Exhibit A), Kobelco excavator contract (Exhibit D), and personal guarantee (Exhibit F), and some invoices (Exhibits B, C, and E).

**{¶3}** The defendants filed an answer and counterclaims, which they amended after the court, on Southeastern's motion, ordered them to provide a copy of the rental agreement referenced in the counterclaims or explain the reason for its omission. The amended answer listed several affirmative defenses, including that Southeastern's claims were barred due to its "fraud, deceit, concealment, and misrepresentation of the material facts relating to providing to the Defendants the essential, necessary, and required equipment in a timely fashion, and in a condition that met the technical and performance specifications required by the government, for use in Defendants' contract with the U.S. Government."

**{¶4}** The amended counterclaims alleged the defendants identified a potential government contract project in Crane, Indiana, with a one-year base term, four 12-month options periods, and a total value of $442,410. The contractor had to provide five pieces

of equipment with certain features, and in the base year, the equipment had to be on site by July 5, 2022. Around January 2022, Southeastern, through Brandon Konkler, its "agent, employee, and designated representative," gave DJG an estimate for the equipment and a "guarantee and commitment to provide the required equipment to [DJG] for a period of five (5) years if it was awarded the contract." Relying on this commitment, DJG submitted a bid for the government contract with the authorization of Welch, its owner and president. Around May 6, 2022, DJG was awarded the contract.

{¶5} The defendants notified Southeastern, and Konkler assured them it "would provide the required equipment at the time and location required for the contract and in a condition that met the technical and performance specifications required by the government for the contract." On July 1, 2022, Konkler told them Southeastern "could only provide one piece of equipment required for the contract at the time and location required for the contract." Around July 10, 2022, Southeastern secured the rest of the equipment from a private contractor, and it was delivered around July 11, 2022. Konkler assured the defendants it "met the technical and performance specifications required by the government for the contract," but it "suffered frequent mechanical problems." The head of a government contracting office submitted an unfavorable rating of the defendants' performance of the contract and recommended that DJG not receive similar government contracts in the future based on the defendants' failure to provide the equipment on time and in a condition to perform the contract. In addition, the government deducted money from the contract price for periods of equipment inoperability, and the contract was not extended.

**{¶6}** The defendants alleged that "[t]he course of conduct and dealings, and the legal and equitable contractual relationship, between the Plaintiff and the Defendants initiated in, on, and around January 2022, consisted of phone calls, emails, text messages, and other written and oral communications which are too voluminous to attach to these pleadings" but were "already in the possession of the Plaintiff" and/or would "be provided, examined, and or clarified during the period of pre-trial discovery." However, to support the allegation that Southeastern gave an estimate and a guarantee and commitment to provide the required equipment to DJG for five years if it was awarded the contract, they attached to their counterclaims an email from Konkler with the subject "Crane IND. Rental Quote" which indicates a quote was attached to the email, but the defendants did not attach the quote to their amended counterclaims. The defendants also alleged Exhibits A and B to the complaint gave "a description of the only equipment provided" by Southeastern and were evidence of its "only partial performance of, and breach of, the original agreement of the parties."

**{¶7}** Based on the above factual allegations, the defendants set forth five counts in their amended counterclaims: Count One – fraud, concealment, & misrepresentation; Count Two – breach of implied covenant of good faith and fair dealing; Count Three – unjust enrichment/detrimental reliance; Count Four – breach of contract; and Count Five – fraudulent inducement. Each count alleged that the defendants suffered damages of loss of income, loss of profits, loss of business reputation, loss of contracting opportunities, and special damages of $442,410. For each count, they requested compensatory damages in excess of $25,000 and special damages of $442,410. They requested punitive damages for all counts except Count Four.

### B. Motions

**{¶8}** Southeastern filed a motion for a more definite statement, to strike portions of counterclaim, and to dismiss counterclaim asking the trial court to: (1) order the defendants to further amend their counterclaims to comply with Civ.R. 10(D)(1), which requires that when a claim or defense is founded on a written instrument, a copy of it be attached to the pleading or the reason for the omission be stated in the pleading; (2) strike all references to a specific amount of special damages sought in the amended counterclaims; and (3) dismiss with prejudice the amended counterclaims as asserted by Welch and Counts One, Two, Three, and Five of the amended counterclaims as asserted by DJG for failure to state a claim upon which can be granted under Civ.R. 12(B)(6). DJG and Welch filed a memorandum in opposition. Southeastern filed a reply brief to which it attached a quote, which it asserted was the one DJG and Welch failed to attach to the amended counterclaims. DJG and Welch filed a motion to strike Exhibit F of the complaint and dismiss Southeastern's claim against Welch. They also filed copies of text messages "as a supplement to the more definite statement" filed by them in their amended counterclaims.

**{¶9}** On June 11, 2024, the court issued an order granting Southeastern's motion and denying DJG and Welch's motion. The court found the amended counterclaims did not comply with Civ.R. 10(D). The court explained that the defendants sought relief based on Southeastern's alleged promise to lease specific equipment "by a specific date on specific terms meeting certain specifications." For the alleged promise to be an enforceable contract, it had to "satisfy the statute of frauds . . . or one of the exceptions thereto." The estimate for the equipment, which the defendants "apparently intended to

incorporate into their Amended Counterclaims, provided that each piece of equipment would cost at least $8,000 per month, well more than the $1,000 threshold for applicability of the statute of frauds in R.C. 1310.08."[1]  The court noted that the estimate did not include a promise to deliver by a certain date, did not include warranties regarding the equipment's compliance with the government contract, and expired, on its face, before the defendants were awarded the government contract.  The court stated that "[w]ithout a written instrument satisfying R.C. 1310.08(A)(2), Defendants' claim for breach of contract is likely amenable to dismissal on the pleadings; Defendants' non-compliance with Civ. 10(D) therefore appears to be an attempt to skirt the statute of frauds or delay the Court's resolution of whether there was an enforceable rental agreement between Southeastern and Defendants beyond the ones at issue in the Complaint."

{¶10}  The court found Counts One and Five of the amended counterclaims failed to state a claim because they were duplicative of the breach of contract counterclaim, the alleged fraudulent conduct was the province of contract law, and the defendants did not allege Southeastern did not intend to fulfill its alleged promises at the time it made them, meaning there were no false representations of an existing fact.  Count Three failed to state a claim for unjust enrichment because there were no allegations Southeastern received a benefit related to the additional equipment it allegedly agreed to provide, and to the extent the defendants pursued a claim based on a written agreement, the existence of such an agreement precluded an unjust enrichment claim.  Count Three failed to state

---

[1] R.C. 1310.08(A) states:  "A lease contract is not enforceable by way of action or defense unless one of the following applies:  (1) The total payments to be made under the lease contract, excluding payments for options to renew or buy, are less than one thousand dollars; (2) There is a writing, signed by the party against whom enforcement is sought or by that party's authorized agent, sufficient to indicate that a lease contract has been made between the parties and to describe the goods leased and the lease term."  R.C. 1310.08(D) sets forth circumstances in which a lease that does not satisfy R.C. 1310.08(A) but that is valid in other respects is enforceable.

a claim for detrimental reliance because Ohio law does not recognize one. To the extent Count Three "was intended to state a claim for promissory estoppel," it failed "for lack of reasonable reliance." As asserted by Welch, all the counterclaims failed "for the additional reason" that he lacked standing. The court also found the parties had agreed the defendants would further amend their counterclaims to "remove references to the exact amount of special damages sought above $25,000, in compliance with Civ.R. 8(A)," and the "separate cause of action for breach of the implied covenant of good faith and fair dealing (Count Two)." And the court explained its rationale for denying the defendants' motion to strike and dismiss.

{¶11} The court then stated Welch's amended counterclaims were dismissed for lack of standing. Counts One, Two, Three, and Five of DJG's amended counterclaims were dismissed without prejudice for failure to state a claim. The court granted DJG leave to, within 14 days, further amend Count Four for breach of contract "to either include a written promise complying with Civ.R. 10(D) and R.C. 1310.08 or to convert this count into a counterclaim for promissory estoppel based on statements that do not otherwise comply with R.C. 1310.08."

{¶12} On June 17, 2024, the defendants filed a motion for reconsideration. On June 21, 2024, the trial court issued an amended order granting Southeastern's motion for a more definite statement, to strike portions of counterclaim, and to dismiss counterclaim and denying DJG and Welch's motion to strike and dismiss. The amended order mirrored the June 11, 2024 order but also stated, "This is a Final Appealable Order and there is no just reason for delay." DJG did not further amend Count Four of its

counterclaims within 14 days of the amended order.  Instead, on July 19, 2024, DJG and

Welch filed a notice of appeal from the amended order.

## II.  ASSIGNMENTS OF ERROR

**{¶13}** DJG and Welch present two assignments of error:

First Assignment of Error: The trial court committed reversible error by dismissing defendant DJ Group, Inc.'s, claim for breach of contract, fraud, concealment & misrepresentation, unjust enrichment-detrimental reliance, & fraudulent inducement on the pleadings under Civ. R. 12(B)(6) when the pleadings complied with the notice requirements of Civ. R. 8 and Civ.R. 10 and Ohio case law.

Second Assignment of Error: The trial court committed reversible error by dismissing defendant Jerry M. Welch's separate claims against the plaintiff for breach of contract; fraud, concealment & misrepresentation; unjust enrichment-detrimental reliance; & fraudulent inducement on the basis that he had no standing to bring those claims.

## III.  LAW AND ANALYSIS

**{¶14}** Before we address the merits of this appeal, we must decide whether we

have jurisdiction to do so.  "Courts of appeals shall have such jurisdiction as may be

provided by law to review and affirm, modify, or reverse judgments or final orders of the

courts of record inferior to the court of appeals within the district . . . ."  Ohio Const., art.

IV, § 3(B)(2).  "If a court's order is not final and appealable, we have no jurisdiction to

review the matter and must dismiss the appeal."  *Clifton v. Johnson*, 2015-Ohio-4246, ¶

8 (4th Dist.).  "'[A]ppellate courts are not bound by a trial court's determination or statement

that a judgment constitutes a final appealable order.'"  *Chilli Assocs. Ltd. Partnership v.*

*Denti Restaurants Inc.*, 2022-Ohio-848, ¶ 27 (4th Dist.), quoting *In re Estate of Adkins*,

2016-Ohio-5602, ¶ 5 (4th Dist.).  And "[i]n the event that the parties do not raise the

jurisdictional issue, we must raise it sua sponte."  *Clifton* at ¶ 8.

### A.  R.C. 2505.02

**{¶15}**  Under R.C. 2505.02(B)(1), an order is final if it "affects a substantial right in an action that in effect determines the action and prevents a judgment[.]"  "'For an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court.'" *State ex rel. Sands v. Culotta*, 2021-Ohio-1137, ¶ 8, quoting *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153 (1989).  "A decision dismissing some causes of action, while leaving some remaining does this . . . ." *DeepRock Disposal Solutions, LLC v. Forté Prods., LLC*, 2021-Ohio-1436, ¶ 33 (4th Dist.).

**{¶16}**  The amended order dismissed some causes of action while leaving some remaining.  The order did not dispose of Southeastern's claims.  The order dismissed Welch's counterclaims but did not specify if the dismissal was with or without prejudice.  "Ordinarily a dismissal of a complaint 'without prejudice' is not a final, appealable order because it is not an adjudication on the merits and does not prevent the party from refiling." *Martin v. Ohio Univ.*, 2023-Ohio-2511, ¶ 20 (4th Dist.), citing *State ex rel. DeDonno v. Mason,* 2011-Ohio-1445, ¶ 2.  In contrast, "[a] dismissal with prejudice operates as an adjudication of the merits." *Fletcher v. Univ. Hosps. of Cleveland*, 2008-Ohio-5379, ¶ 16.  Civ.R. 41(B)(3) states that with exceptions not relevant here, a dismissal "operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies."  Because the amended order did not otherwise specify, under Civ.R. 41(B)(3), the dismissal of Welch's counterclaims operates as an adjudication on the merits, and we will treat it as being with prejudice.

**{¶17}** The amended order did not dispose of DJG's breach of contract counterclaim in Count Four. The court stated that "[w]ithout a written instrument satisfying R.C. 1310.08(A)(2)," that counterclaim "is likely amenable to dismissal on the pleadings," but the court did not dismiss it. Instead, the court granted DJG leave to further amend Count Four "to either include a written promise complying with Civ.R. 10(D) and R.C. 1310.18 or to convert this count into a counterclaim for promissory estoppel based on statements that do not otherwise comply with R.C. 1310.08."

**{¶18}** Southeastern claims DJG's decision to not file another amended counterclaim and "stand on its existing allegations" "effectively resulted in the dismissal" of its breach of contract counterclaim, relying on *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992). In that case, the Third Circuit Court of Appeals held that an order was final and that it had jurisdiction over an appeal even though the trial court did not formally dismiss some allegations and gave the plaintiffs 30 days to amend the complaint. *Shapiro* at 278-279. The circuit court explained that it has held "that a plaintiff can convert a dismissal with leave to amend into a final order by electing to stand upon the original complaint." *Id.* at 278. The circuit court further explained that "[t]he district court stated it would entertain a renewed motion to dismiss if plaintiffs did not amend, but gave no indication that it would reconsider its earlier rulings." *Id.* It "seem[ed] clear that the district court planned to dismiss with prejudice any claims not amended," and making the plaintiffs, who had formally stood on their complaint, "return to the district court now would be a wasteful elevation of form over substance." *Id.* Thus, the circuit court held that "once the amendment period expired, the district court's order had the effect of dismissing the improperly pleaded claims with prejudice." *Id.*

**{¶19}** *Shapiro* is not persuasive. "It is well established in Ohio that a court speaks only through its journal and that no judgment is rendered until the entry is prepared, approved by the court and filed with the clerk." *In re Lowry's Estate*, 140 Ohio St. 223, 227-228 (1942), citing *State ex rel. Indus. Comm. v. Day*, 136 Ohio St. 477 (1940). In this case, the trial court never journalized an entry dismissing DJG's breach of contract counterclaim in Count Four. If it was the court's intent to dismiss Count Four after the amendment period expired, it had to do so through its journal. Such a rule "requires only a modicum of diligence by the parties and the [trial] court, avoids uncertainty, and provides for a final look before the arduous appellate process commences." *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (holding plaintiff who has been given leave to amend complaint may not file a notice of appeal simply because plaintiff does not file an amended complaint and must obtain a further district court determination).

**{¶20}** The amended order also did not dispose of DJG's promissory estoppel counterclaim in Count Three, which the court dismissed without prejudice under Civ.R. 12(B)(6). A judgment granting a Civ.R. 12(B)(6) motion to dismiss may be a final, appealable order, even if the order states the dismissal is without prejudice, if the claims cannot be pled any differently to state a claim for relief. *See Martin*, 2023-Ohio-2511, ¶ 23 (4th Dist.). But even if DJG could not plead its promissory estoppel counterclaim differently, the trial court did not simply dismiss it without prejudice. Instead, the court granted DJG leave to amend Count Four to convert it into a promissory estoppel counterclaim. In doing so, the court signaled it was not finished with DJG's promissory estoppel counterclaim, so we conclude that it remains pending. *See generally Rahmani v. Capital One Bank*, 2025 WL 957485, *1 (4th Cir. Mar. 31, 2025), quoting *Britt v. DeJoy*,

45 F.4th 790, 793 (4th Cir. 2022) (order dismissing complaint with leave to amend "'is not a final decision because it means that the district court is not finished with the case'").

**{¶21}** The amended order did, however, dispose of DJG's counterclaims as set forth in Counts One, Two, Three, and Five, with the exception of the promissory estoppel counterclaim. The amended order dismissed those counterclaims without prejudice and did not grant leave to amend them. For purposes of this appeal, we will presume DJG is incapable of pleading those counterclaims differently.

### B. Civ.R. 54(B)

**{¶22}** Civ.R. 54(B) states: "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." The Supreme Court has explained:

> In deciding that there is no just reason for delay, the trial judge makes what is essentially a *factual* determination—whether an interlocutory appeal is consistent with the interests of sound judicial administration, *i.e.*, whether it leads to judicial economy. Trial judges are granted the discretion to make such a determination because they stand in an unmatched position to determine whether an appeal of a final order dealing with fewer than all of the parties in a multiparty case is most efficiently heard prior to trial on the merits. The trial court can best determine how the court's and the parties' resources may most effectively be utilized. The trial court is most capable of ascertaining whether not granting a final order might result in the case being tried twice. The trial court has seen the development of the case, is familiar with much of the evidence, is most familiar with the trial court calendar, and can best determine any likely detrimental effect of piecemeal litigation. More important than the avoidance of piecemeal appeals is the avoidance of piecemeal trials. It conserves expense for the parties and clarifies liability issues for jurors when cases are tried without "empty chairs."

In making its factual determination that the interest of sound judicial administration is best served by allowing an immediate appeal, the trial court is entitled to the same presumption of correctness that it is accorded regarding other factual findings. An appellate court should not substitute its judgment for that of the trial court where some competent and credible evidence supports the trial court's factual findings. Likewise, regarding Civ.R. 54(B) certification, where the record indicates that the interests of sound judicial administration could be served by a finding of "no just reason for delay," the trial court's certification determination must stand. An appellate court need not find that the trial court's certification is the most likely route to judicial economy, but that it is one route which might lead there. Trial courts, however, should be careful not to breach the duty entrusted to them, and should avoid a mechanical application of the Civ.R. 54(B) language.

(Emphasis in original. Citation omitted.) *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 354-355 (1993).

**{¶23}** The trial court abused its discretion when it certified that that there was "no just reason for delay." This case is in its early stages, and the claims and counterclaims are intertwined. The counterclaims rely on the same set of facts, and it appears DJG and Welch also intend to rely on that same set of facts to defend against Southeastern's claims. Thus, it does not appear that the dismissal of some of the counterclaims will impact the discovery process. Moreover, the record suggests that the trial court will resolve DJG's remaining counterclaims before trial. And once discovery is complete, Southeastern's claims might be resolved by summary judgment. Judicial economy would not be served by multiple pretrial appeals. Because the record does not indicate that the interest of sound judicial administration could be served at this time by an interlocutory appeal of the dismissal of Welch's counterclaims and some of DJG's counterclaims, we are without jurisdiction to consider the merits of this appeal and dismiss it.

APPEAL DISMISSED.

## **JUDGMENT ENTRY**

It is ordered that the APPEAL IS DISMISSED and that appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the WASHINGTON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**